In re Robert C. ROY, Sr., Debtor(s).

**BIRMINGHAM TRUST NATIONAL BANK, Plaintiff,**

v.

**Robert C. ROY, Sr., Defendant.**

**Bankruptcy No. 83–01903–BKC–TCB.
Adv. No. 84–0171–BKC–TCB–A.**

United States Bankruptcy Court,
S.D. Florida.

June 4, 1984.

Steven Siff, Hollywood, Fla., for plaintiff.

Gary Zwickel, Lake Worth, Fla., for debtor.

Daniel L. Bakst, West Palm Beach, Fla., for trustee.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The plaintiff creditor, holding a 1982 Alabama judgment against the debtor in the amount of $44,644, seeks exception from discharge for its claim under 11 U.S.C. § 523(a)(2)(B). The debtor has answered. The matter was tried on May 1.

In 1980, a corporation dominated by the debtor gave a $30,000 check to a third party, Shackelford. When the check bounced, Shackelford was forced to borrow $30,000 from the plaintiff bank. Shackelford failed to repay the loan when it fell due and the plaintiff renewed or extended the note 12 times.

In August, 1981, the bank resisted a 13th renewal until the debtor personally guaranteed Shackelford's note. The bank accepted the guarantee and again renewed the note after a meeting held on August 14, 1981, at which the debtor and Shackelford met with a bank officer and after the bank obtained an unsigned financial statement showing Roy's net worth to be $17,859,320 as of July 31, 1980, over a year earlier.

Under § 523(a)(2)(B), it is plaintiff's burden to prove that the debtor obtained a renewal of credit by use of a written statement respecting the debtor's financial condition: (1) that was "materially false", (2) which the debtor "caused to be made or published with intent to deceive", and (3) upon which the creditor "reasonably relied." *Collier on Bankruptcy* (15th ed.) ¶ 523.09. I agree with the debtor that the plaintiff has failed to carry its burden of

proof, but I do not agree with all of the debtor's contentions.

The debtor has argued first that plaintiff was required to but failed to prove that the debtor benefitted from the loan to Shackelford. I disagree. As noted in *Collier:*

"Nor does it matter whether the money, property, services or credit was obtained for the debtor or for another. In this respect Section 523(a)(2)(B) is not unlike section 17a(2) of the Bankruptcy Act which similarly makes no reference to the recipient of the money, property or credit obtained by means of a false financial statement." Id. ¶ 523.09[3].

The complaint is bottomed upon a financial statement as of April 30, 1981. (C.P. No. 1 "C") which bears the handwritten notation that it was received on November 2, 1981, almost three months *after* the note was renewed. At trial, plaintiff abandoned the 1981 financial statement and rested its case upon an entirely different financial statement dated July 31, 1980. This substantial variance between the allegations and the proof emerged during discovery and there is no indication that the defense was prejudiced. The pleadings are amended to conform to the proof in accordance with B.R. 7015, which incorporates Rule 15(b), *Fed.R.Civ.P.*

The evidence is in conflict as to how the July 31, 1980 financial statement came to the bank's attention. Although the proof is far from conclusive, I find that the debtor caused the statement to be made and it was delivered to the bank officer on or about August 14, 1981, either by the debtor or Shackelford. If the latter occurred, the debtor knew and acquiesced in the delivery of his statement and I find, therefore, that he published the statement to the bank.

I disagree, therefore, with the debtor's contrary contention.

I agree, however, with the debtor that plaintiff has failed to show that the statement was "materially" false. I believe that the discrepancies demonstrated in this record, although significant, still show a true net worth of in excess of $1 million under any view of the evidence. For the purposes of a $30,000 extension of credit, it was immaterial whether the debtor was worth $1 million or $17 million. The discrepancy in this instance was, therefore, immaterial.

I also find that the debtor's publication of this financial statement to the bank was not done with any actual intent to deceive the bank. The explanations offered by him for the discrepancy between the statement and ultimate values realized are plausible as is his explanation for the inclusion of assets not under his direct, personal control. Had he intended to defraud the bank by the use of this financial statement, he would surely have sought some more direct and substantial benefit than any he could receive by voluntarily guaranteeing Shackelford's note for a relatively small amount.

Finally, I agree with the debtor that the plaintiff has failed to prove that it reasonably relied upon this financial statement. It is uncontroverted that the financial statement was not signed. It was not verified in any respect. It was never discussed. It was obviously over a year old and the fact that a more recent statement was subsequently obtained suggests that the bank was unwilling to attach any weight to a statement more than a year old. I believe from this record that the bank, which had already extended this loan 12 times without any guarantee, was prepared to extend it a 13th time with the debtor's personal guarantee without a financial statement. The debtor had been identified by another source to the bank as a responsible businessman and that, under these circumstances, was enough.

It follows that the complaint must be dismissed with prejudice. As is required by B.R. 9021(a), a separate judgment will be entered so providing. Costs may be taxed on motion.