In re Robert **FINLEY** and **Rita Ann Fowler**, Debtors.

**ITT FINANCIAL SERVICES, Plaintiff,**

v.

Robert **FINLEY** and **Rita Fowler**, Defendants.

**Bankruptcy No. 87–4878–8P7.
Adv. No. 87–496.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 4, 1988.

Charles M. Tatelbaum, Tampa, Fla., for plaintiff.

Randall W. Tayler, Sarasota, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a Complaint filed by ITT Financial Services (ITT) seeking a determination that a debt in the undisputed principal amount of $2,659.00 owing to ITT by Robert Finley and Rita Ann Fowler (Debtors) should be determined to be nondischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code.

The undisputed facts which are relevant to a resolution of the matter under consideration as established at the final evidentiary hearing are as follows:

On December 12, 1985, Robert Finley and Rita Fowler completed a Financial Statement in order to receive a loan from ITT. (Joint Exh. 3) The Debtors received a check from ITT in an amount not disclosed in the record.

Subsequently on July 9, 1987, the Debtors completed and signed a second financial statement (Joint Exh. 2) which is the subject of ITT's claim that the debt resulting from this second loan is nondischargeable. On this financial statement, the Debtors listed their total assets as real estate on State Road 70 in Myakka City, Florida, valued at $89,000.00, a 1976 Datsun valued at $800.00, household goods valued at $10,-000.00, and bank accounts valued at $1,000.00.

In listing their total debts, the Debtors stated that the monthly mortgage payment on the Myakka City property was $241.26 and further listed other monthly obligations totalling $450.00. The Financial Statement also disclosed that the Debtors' total net monthly income was $2,250.00. Thus, based on the financial statement, the Debtors' debt to net income ratio was approximately 31%, which was well below the ratio of 50% established by ITT as the cut-off ratio used to determine whether an applicant qualified for a loan.

It is without dispute that the Debtors failed to list two parcels of real estate on

the July 9, 1987 financial statement, and in turn failed to disclose that the monthly mortgage payments on these properties totalled $1,957.00. Simple mathematics discloses that had the Debtors listed this obligation on the financial statement, their debt to net income ratio would have been substantially higher than ITT's 50% cut-off ratio.

On July 9, 1987, the Debtors signed a Disclosure Statement, Note and Security Agreement, which reflects that the total amount obtained by the Debtors was $2,659.56; $673.22 of which was used by the Debtors to pay off their first loan with ITT. (Joint Exh. 1)

Based on the foregoing, it is the contention of ITT that the debt should be determined to be nondischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code, which provides as follows:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

■ It is now well established that exceptions to discharge as set forth in § 523 are liberally construed in favor of the Debtor and strictly construed against the creditor to carry out the "fresh start" policy of the Bankruptcy Code. *In re Linn*, 38 B.R. 762 (9th Cir. BAP 1984). As a result, the creditor seeking the determination of nondischargeability bears the burden of proving by clear and convincing evidence each element set forth in § 523(a)(2)(B). *In re Besch*, 42 B.R. 45 (Bkrtcy.Ill.1984) Specifi-cally, the creditor must show that a statement in writing is materially false respecting the Debtor's financial condition, that the creditor reasonably relied on the statement, and that the Debtor made the false statement with the intent to deceive. *In re Duncan*, 35 B.R. 323 (Bkrtcy.Ky.1983).

■ While there is no evidence that the first financial statement was tainted by any falsity, there is no question that the July 1987 financial statement was false. That leaves for consideration whether the falsity was material. As was noted in *In re Denenberg*, 37 B.R. 267 (Bkrtcy.D.Mass.1983), "a materially false statement is one which paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Id* at 271. Based on the evidence presented, the Court is satisfied that as the mortgage obligations, if listed, would have drastically affected ITT's computation of the debt to net income ratio necessary to qualify for a loan, this omission was material. Further, there is no question that as ITT used the information provided on the financial statement to determine whether to make the loan to the Debtors, it reasonably relied on the financial statement. Finally, the Court is satisfied that the Debtors' failure to disclose the mortgage obligations was done with the requisite intent to deceive. This is so as "intent to deceive" may be inferred when a Debtor knew or should have known the falsity of a statement made. *In re Valley*, 21 B.R. 674 (Bkrtcy.D.Mass.1982) Clearly, the Debtors knew the financial statement was false. Therefore, based on the foregoing, the debt should be determined to be nondischargeable.

A separate Final Judgment will be entered in accordance with the foregoing.