**In re Lance Alan HALL and Wendy Michelle Hall, Debtors.**

**CHEVY CHASE FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Lance Alan HALL and Wendy Michelle Hall, Defendants.**

**Bankruptcy No. 88–5193–8P7.**
**Adv. No. 88–508.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 28, 1989.

Andrew S. Forman, Tampa, Fla., for plaintiff.

Ida M. Lawry, Fort Lauderdale, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is the dischargeability, vel non, of a debt admittedly due and owing by Lance Alan Hall and Wendy Michelle Hall (Debtors) to Chevy Chase Federal Savings Bank (Bank). The Complaint filed by the Bank consists of one count and asserts that the Debtors are indebted to the Bank in the amount of $5,605.54. The Bank also asserts that this debt is a nondischargeable obligation on the basis that it represents a liability through obtaining monies by false pretenses. The Answer filed by the Debtors, entitled "Response", is supposed to be an answer on behalf of both Debtors even though the claim of nondischargeability in the Complaint is asserted only against one defendant, albeit not specifying which one.

At the final evidentiary hearing, the following facts have been established based on which this Court is now called upon to determine whether or not the claim of the Bank can be sustained.

The Debtors, husband and wife, were, at the time relevant, employed, the husband initially as a truck driver for Allied Van Lines and the wife as a real estate sales person. During the initial employment of the husband, he worked as a driver moving goods only in intrastate, and not as an over-the-road driver operating long distance hauling interstate. This distinction appears to be crucial because the earning capacity of truck drivers substantially differs and drivers in interstate transportation, referred to as over-the-road drivers, earn substantially more than drivers who are limited to intrastate work.

Initially the husband's compensation was in 1984 and 1985 $234.00 per week as a trainee. It appears that in the summer of 1987, he was transferred to interstate transportation work and did, in the year 1987, earn, as an independent contractor truck driver, $9,364.73 between June, 1987, and the end of September, 1987. In the preceding six (6) months of that year, as an employee of Hanna Transfer Co.–South, he earned $4,664.40. It appears that he made one over-the-road trip covering several states. This trip lasted four to six weeks and it was during this trip that the truck broke down, although it remained driveable. At the conclusion of the trip, the Debtor returned to Tampa and was temporarily placed back into intrastate service. His employment was terminated in late October or early November. While the evidence is unclear as to the precise date he lost his job, it is without dispute that he remained unemployed until mid-November when he obtained employment with C.G. Suarez Company as a route salesman. Between November 20 and December 31, he earned $2,985.71 on this job. (Defendants' Composite Exhibit # 1). According to the Statement of Financial Affairs, his gross income in 1986, before taxes, was $16,273.00 and in 1987 was $13,650.11. The earnings of the wife in 1986 were $16,173 and in 1987 were $3,835.04. It also appears that the wife received in 1987, as unemployment compensation, $2,160.00.

The Bank, pursuant to its usual practice, solicited Visa charge customers through mass mailing and invited the addressees to apply for a Visa card. According to the policy of the Bank, before it mailed out the solicitation letter it did what is called a pre-screening of the prospective customer. This process basically consisted of a preliminary credit check, usually based on information furnished to the Bank by the credit bureau of the locality where the prospective customer resided. If the addressee to whom the solicitation letter was sent responded and sent in a request for credit card, the Bank conducted a second credit check and, if satisfied, notified the prospective customer that the credit card application had been approved and issued a credit card.

In the present instance, the Debtors received such a solicitation letter to which the husband responded by completing the re-

quest for credit (Plaintiff's Exhibit # 1). The request for credit actually identified, as a prospective user of the card, only the husband. The request for Visa/MasterCard indicated that his annual salary was $35,000.00; that he has two dependents; that he owned a home and gave only one credit reference. The request for credit card was signed by the Debtor/Husband on September 30, 1987 and although it is not clear and it is not conceded, also supposed to have been signed by the Debtor's wife.

According to the statement sent to the Debtor by the Bank there were no purchases made by the use of the credit card during the first billing period beginning November 6, 1987, and ending December 2, 1987. The statement included one debit entry which represents the annual fee charged by the Bank for the privilege of using the credit card.

The picture changed radically in no time. During the billing period beginning December 7, 1987, and ending January 4, 1988, the Debtor incurred charges by using the credit card in the amount of $4,767.31, comprised of $3,900 cash advances and $867.31 for purchases of goods. It is noted that among the purchases was the purchase of a dog for $346.49. This statement required a minimum payment of $135.00 which was not paid. During the next billing period, between December 12 and January 6, the statement submitted to the Debtor indicates purchases for goods in the amount of $232.24 and $900.00 cash advances. No payment was made on this statement either. The last activity on this account occurred during the billing period beginning February 8, 1988, and ending March 4, 1988, in the amount of $42.25.

It further appears that the card of the Debtors was reported stolen or lost on December 17, 1987. The Bank promptly issued a new credit card on December 18, 1987, but due to an inhouse record keeping error, did not transfer the previous balance to the new account until later. The credit limit on this second card was $5,000.00. By January 6, 1988, the last billing period, the credit limit was exceeded by the Debtor/Husband by $605.54. It is without dispute that no payment was made whatsoever to the Bank for the charges made on the Visa charge by the Debtor. It should be noted that the statement covering the period of March 7, 1988, included, for the first time, a notice that "if payment of past due amount shown above is not received by 03/28/88 a late charge will be imposed on your account". It was not until the April statement that the Debtors were informed that their charge privileges were revoked and payment should be made immediately.

Based on the foregoing facts the Plaintiff contends that it is entitled to a declaration by this Court that the debt owed by these Debtors to the bank is nondischargeable based on § 523(a)(2)(A) of the Bankruptcy Code.

■ It should be noted at the outset that although there was no motion made at the conclusion of the evidence concerning the claim asserted against Mrs. Hall, there is not an iota of evidence in this record first that she applied for a Visa card, albeit she signed the request, but, most importantly, that she never made any charges whatsoever or used the card at any time and obtained any cash advances based on the Visa card. For this reason, it is clear that the claim against her cannot be sustained and should be dismissed even if there was, in fact, one asserted against her in the complaint which is unclear at this point.

This leaves for consideration the claim of nondischargeability asserted against the Debtor, Mr. Hall.

11 U.S.C. § 523(a)(2)(A) provides that a Chapter 7 discharge does not relieve the debtor from any debt "for obtaining money, property, or an extension of credit by false pretenses, a false representation or actual fraud." To succeed on a claim under this Section, a creditor must prove three elements: (1) that the debtor obtained the money through representations which the debtor either knew to be false, or with such reckless disregard for the truth as to constitute willful misrepresentation. *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979); (2) that the debtor acted with intent to deceive. *Gabellini v. Rega*, 724 F.2d 579 (7th Cir.1984); (3) that the Plaintiff

asserting the claim actually relied on the false representation. It is clear that the burden to prove facts establishing all these elements by clear and convincing evidence is on the Plaintiff. *In re Brink,* 30 B.R. 28 (Bkrtcy.M.D.Fla.1985).

■ The Debtors contend that the Plaintiff has failed to prove any of the essential elements of a claim of nondischargeability under § 523(a)(2)(A) of the Bankruptcy Code. This Court disagrees. At the time the Debtor made the various purchases on the credit card and the various cash withdrawals, he was either unemployed or even if he was subsequently employed, his salary certainly was not enough to enable him to meet his outstanding financial obligations, let alone the obligations incurred by him through the use of his credit card. There is no question that he was fully aware of this fact. Moreover, it is clear that he had no prospects of a raise or a substantial increase in salary and he was fully aware of this fact also. Based on the foregoing, this Court is satisfied that when the Debtor obtained the various cash advances through the use of this credit card, he knew that he did not have the present ability nor the future realistic possibility to meet these obligations.

In addition, this Court is likewise convinced that the Plaintiff has met its burden or proof with respect to each element required under that section under § 523(a)(2)(B) of the Bankruptcy Code. This is so because the Debtor at the time he applied for the credit card from the Plaintiff listed his annual income at $86,-500.00. Notwithstanding that his W–2 statements for the same year indicated compensation in the approximate amount of $13,000.00. In support of his position that he did not submit a false financial statement, the Debtor argues that the amount inserted on the application of his annual income, the $35,000.00 was reasonable since he was "told he was going to make $86,500.00 in the first year" by other persons employed in the same line of business. Be that as it may, it is clear that the Debtor had no business to state on his application as an existing fact that his annual salary was the amount stated.

This Court is not unmindful of the case of *First National Bank of Mobile v. Roddenberry,* 701 F.2d 927 (11th Cir.1983), where a panel of the Eleventh Circuit held, inter alia, that the fact that a cardholder incurred debts in excess of the authorized limit is insufficient by itself to sustain a claim of nondischargeability under § 523(a)(2)(A). The panel reasoned that when the card is issued, the issuer assumes the risk that the user may exceed the authorized credit limit, and only charges made after the cardholder was effectively notified that the privilege to use the card has been rescinded, may the card issuer assert a viable claim of nondischargeability and the claim is limited to charges made after the revocation of the privilege to use the card. This Court is satisfied that *Roddenberry* is not controlling the present instance for the following reason: The claim of nondischargeability in this case, unlike the claim of nondischargeability in *Roddenberry,* is not based on the fact that the cardholder exceeded the authorized credit limit. In this instance, the Debtor obtained the card first by submitting a materially false statement in writing concerning his financial condition by stating that his annual salary is $80,000.00, when, in fact, he knew that he never earned this amount in his life; second, when he incurred the charges through the use of the credit card, he knew, or at least should have known, that he would not be able to meet his obligation owed to the Bank. In addition, it is fair to infer from the facts of this case that he never paid a single dime to the Bank that he never intended to pay the charges he incurred. Thus, this is not an "implied promise" to pay situation, e.g., *Davidson–Paxton v. Caldwell,* 115 F.2d 189 (5th Cir.1940), *cert. den.,* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941), but one in which the Debtor obtained money by actual fraud. Based on the foregoing, this Court is satisfied that the obligations owing by the Debtor, Mr. Hall, to the Plaintiff shall be declared to be nondischargeable pursuant to § 523(a)(2)(A) and (B).

A separate Final Judgment will be entered in accordance with the foregoing.