**In re Linda Lombardi BURTON a/k/a Linda Lombardi, Debtor.**

**BANK FIVE FOR SAVINGS, Plaintiff,**

**v.**

**Linda LOMBARDI, Defendant.**

**Bankruptcy No. 89–10042–JNG.**
**Adv. No. 89–1116.**

United States Bankruptcy Court,
D. Massachusetts.

Oct. 5, 1989.

James C. Fox, Shapiro Israel & Shapiro, Boston, Mass., for plaintiff.

Richard G. McKenzie, Kahn & McKenzie, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

## INTRODUCTION

The matter before the Court is the adversary complaint filed by Bank Five for Savings (the "Bank") against Linda Lombardi Burton (the "Debtor"). The Bank seeks a determination that debts in the total amount of $45,184.90 are nondischargeable pursuant to section 523(a)(2)(B) of the Bankruptcy Code. The Bank alleges, and the Debtor admits, that she executed two notes in favor of the Bank, one dated December 3, 1987 in the face amount of $27,-400 and the other dated December 3, 1988 in the face amount of $17,500.

The Court conducted an evidentiary hearing on August 11, 1989 at which time three witnesses testified and a total of eight exhibits were introduced as evidence. The Court now makes the following findings of fact and rulings of law.

## FACTS

The evidence established that the Debtor executed two financial statements in conjunction with at least four and perhaps six term notes payable to the Bank. The financial statements were dated May 31, 1986 and March 7, 1988. The notes that were admitted into evidence were dated June 25, 1986, September 23, 1986, May 21, 1987 and December 3, 1988. The first three notes were stamped paid and the two additional notes that were not offered into evidence but referred to in the testimony were also paid. The note dated December 3, 1988 in the face amount of $17,500 represents a rollover of previous loan amounts and new borrowing. The evidence established that the Debtor used part of the proceeds from a home equity loan to reduce the amount outstanding on the May 21, 1987 note in the face amount of $15,000 by half.

A third financial statement was given to the Bank and placed in the Debtor's file. Unlike the statements dated May 31st and March 7th, this statement, which was dated September 1, 1987, was prepared by the accounting firm Cooper & Company P.C. It was given to the Bank in conjunction with an application for a line of credit and a loan for a business venture in which the Debtor was a partner. The Debtor testified that her husband was going to co-sign or guaranty the note for the business loan (her words were "go on the note").[1] No business loan was ever extended to the Debtor based upon the financial statement of September 1, 1987.

The June 25, 1986 financial statement shows the Debtor as having a net worth of $520,500 and an income of $130,000 per year. The Debtor's assets at that time included the following:

---

1. The Court will refer to James Burton as the Debtor's husband. The Debtor married Burton during the course of her dealings with the Bank. Accordingly, it may be that Burton was only her fiance at the time she executed some of the financial statements in question.

| Cash | — $ 6,500 |
|---|---|
| Non-marketable Securities | |
| Yankee Group | — $420,000 |
| Control Key | — $ 54,000 |
| 1984 BMW | — $ 20,000 |
| other personal property | — $ 30,000 |

George B. Pike, a Bank vice-president, testified that he verified the Debtor's income after assisting the Debtor in preparing this statement. Pike testified that the Bank relied on the financial statement and the Debtor's written representations as to its accuracy in approving the loan. The Debtor testified that she believed the statement to be entirely accurate. No evidence was submitted to contradict this testimony.

The September 1, 1987 financial statement shows the Debtor to have a net worth of $457,000. The Debtor listed the following assets on the financial statement:

| Cash | — $ 15,000 |
|---|---|
| Marketable Securities | |
| Control Key corp. | — $ 52,500 |
| Equity in real estate | — $160,000 |
| Motor vehicle | — $ 16,000 |
| Personal property | |
| jewelry and household | |
| furnishings | — $ 75,000 |
| art collection | — $150,000 |
| wine collection | — $ 5,000 |

At the time the Debtor submitted the September 1, 1987 financial statement to the Bank, she had purchased a waterfront condominium in Boston and was a 50% partner in Bon Vivant, a gourmet shop. As has been indicated, the Debtor submitted this document to the Bank for the purpose of obtaining a loan for Bon Vivant, which loan, if granted was to be co-signed or guaranteed by her husband. Pike testified that he relied on this statement in approving the Debtor's personal loans. The Debtor admitted that this statement included assets that belonged to her husband and that this was explained to the Bank officer. Additionally, in her answer to the complaint, the Debtor, admitted that at the section 341 meeting she indicated that her jewelry had no great value and the art work belonged to her husband.

The financial statement of March 9, 1988 shows the Debtor's net worth to be $164,500 and her income to be $80,000 per year. The Debtor listed the following assets on this statement:

| Cash | — $ 5,000 |
|---|---|
| non-marketable securities | |
| Control Key Corp. | — $ 54,000 |
| real estate | |
| ($430,000 − $317,000 mort- | — $113,000 |
| gage) | |
| 1984 BMW | — $ 15,000 |

Two other figures, each in the amount of $30,000, appeared on the asset side of the statement of financial condition. The Debtor testified that one $30,000 figure represented the value of her personal property, and the other $30,000 figure represented the value of an art collection that belonged to her husband and was located in her condominium. The Debtor and her husband both testified that they explained the fact that the Debtor did not own the collection to Pike, but Pike indicated that he did not recall any such conversation. Pike also testified that despite the substantial change in the Debtor's net worth, he made no inquiries about the change. No evidence was submitted by the Bank with respect to the $27,400 note referred to in the complaint.

## DISCUSSION

Cases discussing section 523(a)(2)(B) of the Bankruptcy Code are legion. Therefore, an in depth review of its parameters is unnecessary. It is sufficient to observe that the Bank had to prove, by clear and convincing evidence, that the Debtor obtained "money, property, services, or an extension, renewal, or refinancing of credit" by—

(B) use of a statement in writing

(i) that is materially false; .

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C. § 523(a)(2)(B).

The Court finds that the Bank has failed to prove each of these elements by clear and convincing evidence. Specifically, the Court finds that the May 31, 1986 financial statement and the March 7, 1988 financial statement were not materially false when presented to the Bank. Neither statement

"paint[ed] a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *In re Denenberg*, 37 B.R. 267, 271 (Bankr.D.Mass.1983); *see also In re Finley*, 89 B.R. 938, 939 (Bankr.M.D.Fla.1988). The Debtor's initial statement was accurate. The Debtor's March 7th statement was shown to contain a single untruth. The Court is unable to conclude, in view of the Debtor's $80,000 per year income and substantial home equity, that the Bank's decision to roll-over the loan on December 3, 1988 turned on the presence of an unappraised art collection valued at $30,000 that appeared on a financial statement that was nine months old on the date the loan was made.

Moreover, the Court also is forced to conclude that to the extent the Bank would have the Court believe that it relied on the September 1, 1987 statement in making the December 1988 loan, its simultaneous reliance on both the September 1, 1987 and the March 7, 1988 statements to make that loan was unreasonable. Given the substantial decline in the debtor's net worth and the deletion of $200,000 in assets from the March 7th statement, the Bank's failure to question the Debtor about these changes suggests unreasonable conduct.

Finally, the Court is unable to conclude that the Debtor submitted the financial statements with an intent to deceive. The two statements submitted with respect to the personal loans were not materially false, and the Debtor's testimony relative to the $30,000 art collection was credible. Although the September 1, 1987 statement is more problematic, the Court notes that it was submitted for the purposes of obtaining a business loan, and no such loan was extended.

In accordance with the foregoing, the Court hereby enters judgment for the Debtor/defendant and against the Bank.