In re Joe Alan **GRAHAM** and Sandra Elaine Graham, Debtors.

**CHEVY CHASE FEDERAL SAVINGS BANK, a federally chartered savings bank, Plaintiff,**

v.

Joe Alan **GRAHAM** and Sandra Elaine Graham, Defendants.

**Bankruptcy No. 88–2404–BKC–3P7. Adv. No. 89–8.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Oct. 17, 1990.

Lance P. Cohen, Jacksonville, Fla., for plaintiff.

Patrick A. Carr, Jacksonville, Fla., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

Plaintiff, Chevy Chase Federal Savings Bank, filed a two count complaint against defendants, Joe Alan and Sandra Elaine Graham, seeking an exception to discharge of a debt pursuant to 11 U.S.C. § 523(a)(2)(A) and (B), and denial of the discharge pursuant to 11 U.S.C. § 727(a)(4) and (5). Trial of this adversary proceeding was held on August 1, 2, and 4, 1990, and upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

Defendant Joe Graham had been employed in the home repair business for over seven years prior to the filing of the petition. He has a ninth grade education. He has operated several sole proprietorships under such names as Afford-A-Painter, Afford-A-Stucco, Afford-A-Roofer, and Afford-A-Services and grossed approximately $30,000.00 per year. Defendant Sandra Graham had been employed by Southern Bell Telephone Company for approximately 6 years prior to the filing of the petition and was earning approximately $30,000.00 per year.

Defendants first encountered financial difficulties when they invested in a house, which they were to repair and sell for a profit. The extensive repairs and the sluggish housing market contributed to defendants' woes. Defendant Joe Graham was also cited for soliciting repairs without a roofing contractors license and was not allowed to do such repairs. He had anticipated the profits would solve many financial problems.

On March 2, 1988, plaintiff telephoned defendants to solicit their joint application for a credit card. Defendant, Joe Graham, represented to plaintiff that he was employed for seven years as a maintenance technician by Afford-A-Service; that the defendants owned their home for four and one-half years; and that he and his wife each earned approximately $30,000 per year.

Contrary to these representations, Joe Graham had only earned approximately $3,500.00 for both years 1987 and 1988, and he and his wife had owned their home for less than a year.

Plaintiff filed the income and financial information provided by the defendant in its computers with the end to calculate debt-to-income ratio and disposable income. This data was within the written criteria of the plaintiff, and on March 28, 1988, the defendants were issued a Chevy Chase VISA card with a $5,000 credit limit.

During the first three weeks after receiving the card, defendants incurred $4,999.16 in charges, of which $4,800.00 were cash advances. Defendants made the charges within a thirty-day period, the last charge

being made prior to the date of the first payment. Defendants made no payments on the account other than issuing a check for $5.00, which was drawn on a closed checking account and dishonored by the drawee bank. The card was revoked by Chevy Chase on July 2, 1988.

Defendants filed for relief under Chapter 7 of the Bankruptcy Code on October 11, 1988. Defendants filed their schedules on October 21, 1988. Plaintiff contends that the schedules contain omissions and errors sufficient to deny the defendants' discharge.

Specifically, the omissions consist of: (i) ownership and transfer of 50% interest in realty to Arthur Graham, brother of the defendant, two months prior to filing; (ii) ownership of a 1979 Toyota truck; (iii) ownership and transfer of a 1980 Pontiac automobile after the filing of this case; (iv) ownership and transfer of defendant Joe Graham's interest in Afford–A–Service and Afford–A–Maid to his brother, Arthur Graham.

Plaintiff additionally contends the defendants failed to keep or maintain documents and records of these transactions and businesses.

Defendants respond that the omissions were not intentional, were the result of their lack of sophistication and involved negligible value.

## CONCLUSIONS OF LAW

### Credit By False Pretenses

■ 11 U.S.C. § 523(a)(2)(A) provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, the extent obtained by—

(A) false pretenses, a false representation, or actual fraud....

To prevail on a claim under this section, a creditor must prove the following:

(i) the debtor made a false representation with the purpose and intention of deceiving the creditor;

(ii) the creditor relied on such representation;

(iii) his reliance was reasonably founded; and

(iv) the creditor sustained a loss as a result of the representation.

*In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986).

■ Plaintiff must meet this burden by clear and convincing evidence. *In re Brink,* 30 B.R. 28, 30 (Bankr.W.D.Wis. 1983).

■ Defendants, utilizing the credit card, made purchases and secured cash advances at a time when Joe Graham was essentially unemployed. Joe Graham testified that he had closed his roofing business and had no work other than renovation work on his investment property and for his mother-in-law, for which he was paid $800.00. His net income for both 1987 and 1988 was only $3,500.00. When coupled with the income of his wife, this would not have been enough to enable the defendants to meet their outstanding financial obligations and repay the debt to plaintiff.

Defendants' misrepresentation of their income, length of time of home ownership, and Joe Graham's employment history is evidence of a fraudulent intent in obtaining and using the credit card.

At the time the defendants used the credit card to obtain cash advances and goods they knew they did not have either the present ability or a realistic prospect to repay this debt and they incurred the debt by false pretenses, false representations, or actual fraud. *See, In re Hall,* 101 B.R. 781 (Bankr.M.D.Fla.1989).

### False Statement in Writing

11 U.S.C. § 523(a)(2)(B) provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing or credit, to the extent obtained by—

   (B) use of a statement in writing—

   (i) that is materially false;

   (ii) respecting the debtor's or an insider's financial condition;

   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

   (iv) that the debtor caused to be made or published with intent to deceive....

■ To prevail on a claim under this section, a creditor must prove the following elements:

   (i) The use of a materially false statement in writing regarding the debtor or an insider's financial condition;

   (ii) The debtor caused this statement to be published to the plaintiff with an intent to deceive;

   (iii) The plaintiff relied on the false statement and sustained a loss as a result thereof.

See, In re Seaborne, 106 B.R. 711 (Bankr. M.D.Fla.1989).

■ Again, it is the creditor seeking a judgment of nondischargeability that bears the burden of proof through clear and convincing evidence. *In re Brink, supra; In re Finley,* 89 B.R. 938, 939 (Bankr.M.D.Fla. 1988).

■ Defendants caused a written statement regarding their financial condition to be published by providing plaintiff's telephone solicitor the financial information contained on the written application for a credit card. A written statement does not have to be physically prepared by a defendant. The requirements of § 523(a)(2)(B) are met if the existence of a written statement was caused to be prepared by the defendant. *In re Roy,* 40 B.R. 452, 454 (Bankr.S.D.Fla.1984).

■ The financial information set forth on the credit card application grossly misstated the income of Joe Alan Graham. Defendants obtained a deed to their residence within months of filing their petition, yet stated on their application that they had owned the property for over four years. In their application, defendants stated that Joe Alan Graham had been employed by Afford–A–Service for seven years as a maintenance technician. Evidence at trial showed that he had not been so employed but had operated several sole proprietorships under similar names.

The Court finds that plaintiff reasonably relied on the financial information provided by defendants. The disclosed information was utilized by plaintiff in determining defendants' qualifications for the credit card. Had defendants been truthful in disclosing facts, they would not have qualified.

Defendants contend that this adversary proceeding is governed by *First National Bank of Mobile v. Roddenberry,* 701 F.2d 927 (11 Cir.1983). In *Roddenberry,* the court held that charges on a credit card incurred prior to a bank's revocation of card privileges were dischargeable. This Court finds *Roddenberry* distinguishable on the facts. *Roddenberry* dealt with debtors who had exceeded their authorized credit limit over a period of years of use of the credit card. The instant adversary proceeding is directly analogous to *In re Hall, supra,* where that court distinguished *Roddenberry* stating:

> [U]nlike the claim of nondischargeability in *Roddenberry* ... the Debtor obtained the card first by submitting a materially false statement ... stating his annual salary ... when, if fact, he knew he never earned this amount in his life ... [and] he knew, or at least should have known, that he would not be able to meet his obligation to the Bank. In addition, it is fair to infer from the fact of this case that he never paid a single dime to the Bank that he never intended to pay the charges he incurred.

*In re Hall,* 101 B.R. at 784.

The debt of defendants to plaintiff is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B).

### *False Oath or Account*

■ 11 U.S.C. § 727(a)(4) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account. . . .

The subject matter of a false oath is "material" if it bears a relationship to the debtor's business transactions, estate, or concerns the discovery of assets, business dealings or existence and disposition of property. *In re Steiker*, 380 F.2d 765 (3rd Cir.1967). It is this Court's opinion that the defendants' failure to disclose the transfer of ownership of interests in realty and personalty, under the totality of the circumstances, was not material.

■ Plaintiff has failed to prove that defendants had any actual intent to defraud the creditors, as there was no reasonable motive suggested for the omissions. It is plaintiff's burden to prove by a preponderance of the evidence that the debtors made false statements fraudulently or with the specific intent to deceive. *In re Goldstein*, 66 B.R. 909 (Bankr.W.D.Pa.1986). The more reasonable explanation for these omissions is inadvertence.

■ While it can be said that the absence of value does not in and of itself excuse omission, it can be reasonably considered by the Court as to the issue of intent and motivation to deceive and the materiality of the omission. Where the assets omitted from the bankruptcy schedules are of little or no value, fraudulent attempts to conceal assets will not be imputed. *See, In re Topping*, 84 B.R. 840 (Bankr.M.D.Fla.1988).

### Loss of Assets

■ 11 U.S.C. § 727(a)(5) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. . . .

The Court finds that defendants have satisfactorily explained their loss of assets. There is no question that their business practices were ill-conceived and overly optimistic and, as a result, defendants used their credit card to pay bills, living and entertainment expenses. However such conduct in this adversary proceeding does not warrant the denial of their discharge.

### CONCLUSION

By separate Final Judgment, the Court will (1) grant defendants' discharge, and (2) except from the discharge their debt to plaintiff for the charges incurred on the credit card.