**In re David L. KITZMILLER and Marie J. Kitzmiller, Debtors.**

**FIRST CARD SERVICES, INC., Plaintiff,**

v.

**David L. KITZMILLER and Marie J. Kitzmiller, Defendants.**

Bankruptcy No. 95–11486.
AP No. 96–1030.

United States Bankruptcy Court, N.D. West Virginia.

Feb. 25, 1997.

---

5. The February 12, 1997 confirmation hearing was continued pending resolution of the Bank's motion to annul.

James W. Martin, Jr., Clarksburg, WV, for Plaintiff.

Thomas H. Fluharty, Clarksburg, WV, for Defendants/Debtors.

## MEMORANDUM OPINION
## AND ORDER

L. EDWARD FRIEND, II, Bankruptcy Judge.

The factual matters in this case are not at issue. The Debtors obtained cash advances on November 3, 1995, in the amount of $3,475.00; November 16, 1995 in the amount of $1,400.00; and November 30, 1995, in the amount of $700.00. All the cash advances were obtained within 60 days of the filing of the bankruptcy petition. At the time the cash advances were taken, the Debtors were aware that David L. Kitzmiller would no longer be employed because the company had sent written notice that it was closing its operations.

Courts are generally in agreement that the traditional elements of fraud must be applied and proven to sustain a cause of action under § 523(a)(2)(A). These elements are:

1. That the debtor made a representation;

2. That at the time the debtor made the representation, the debtor knew it was false;

3. That the debtor made the representation with the intention and purpose of deceiving the creditor;

4. That the creditor relied on such representation; and

5. That the creditor sustained the alleged losses as the proximate result of the representations.

*RELIANCE.* In *Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the United States Supreme Court held that under § 523(a)(2)(A) the standard for reliance (number 4 in the above list) is justifiable reliance. The creditor must first

prove actual reliance and then the court is to determine if such reliance was justifiable under the circumstances. Justifiable reliance then is an element to be proved by all plaintiffs in § 523(a)(2)(A) proceedings regardless of the theory of the case. *AT & T Universal Card Servs. v. Alvi (In re Alvi)*, 191 B.R. 724 (Bankr.N.D.Ill.1996). Therefore, the plaintiff must prove its reliance was justifiable under the circumstances of the case. In this case, the Plaintiff offered no proof of its reliance on any misrepresentations by the Debtors.

*REPRESENTATIONS.* The creditor asserts that the Debtors make an implied representation of the ability to pay upon making a charge upon the card. There are three theories courts generally followed with regard to credit cards. *See, Chase Manhattan Bank, N.A. v. Ford (In re Ford)*, 186 B.R. 312 (Bankr.N.D.Ga.1995); 2 David G. Epstein, et al., *Bankruptcy*, § 7–26 (1992). The first theory is commonly referred to as the "implied representation" theory. Under this theory, the cardholder impliedly represents upon using the credit card that there is both an ability and intent to repay. This fiction is required because at the time of the transaction, there is usually no contact between the cardholder and the credit card company. The second theory, known as the assumption of the "risk" theory holds that the cardholder, merely by using the credit card, does not make any representations to the issuer. Under this theory, the charges are dischargeable unless the card holder continues to use the credit card after the issuer revokes it. The theory here is that the issuer assumes the risk that the cardholder will incur more debts than it is possible to repay. The third theory is the "totality of circumstances" theory. Here a court may infer the existence of the debtor's intent not to repay if the facts and circumstances of a particular case present a deceptive pattern. This theory requires that actual fraud be proven upon the part of the debtor. The courts use a variety of factors upon which to consider the acts of the debtor. *Hecht's, A Division of May Department Stores v. Valdes (In re Valdes)*, 188 B.R. 533 (Bankr.D.Md.1995). There are 12 usual factors to be considered, but cases are not limited to these 12 and all 12 factors need not be proven. *Id.* at 537.

Although the "totality of circumstances" is favored by this Court, the Fourth Circuit has elected for this Court certain limitations on the representations that may be made by the debtor. In *Engler v. Van Steinburg*, 744 F.2d 1060 (4th Cir.1984), the Fourth Circuit held that a debtor's misrepresentations that he owned property free and clear related to his financial condition and that this statement must be in writing to bar the debtor's discharge. *Id.* (citing *Blackwell v. Dabney*, 702 F.2d 490 (4th Cir.1983)). Statements that the company is top notch, successful, etc. are not actionable unless they are in writing since they are statements of financial condition. *Blackwell*, 702 F.2d at 492. Given this precedent, this Court is bound by the Circuit's interpretation of a broad range of statements which constitute financial condition. *See, Gehlhausen v. Olinger (In re Olinger)*, 160 B.R. 1004 (Bankr.S.D.Ind.1993). The Fourth Circuit is one of the Circuits where the term "financial condition" refers to a broad range of statements. *Id.* at 1011.

In *Chemical Bank v. Sigrist (In re Sigrist)*, 163 B.R. 940 (Bankr.W.D.N.Y.1994), the bankruptcy court cites *Blackwell* for the proposition that only written financial statements of a financial condition are actionable. Therefore, an oral representation of the debtor's ability to repay is not actionable. If the oral representation is not actionable, then the implied ability to repay is even less actionable. *Id.* at 947.

Consequently, in the Fourth Circuit, if it is a financial condition that the creditor relies upon for the representation of the debtor, then this statement must be in writing. A representation that the debtor has the ability to repay is a statement of the debtor's financial condition. Therefore, it must be in writing. There can be no oral implied representation that the debtor has the ability to repay.

In *Chevy Chase, F.S.B. v. Pressgrove (In re Pressgrove)*, 147 B.R. 244 (Bankr. D.Kan.1992), the Court rejected the use of the card as constituting a representation of the debtor's intent and ability to repay. The Court stated that the creditor had presented no evidence to explain how it solicited debt-

ors; the only evidence that the creditor knew of the debtors' financial condition was their income. There must be some basis for offering the pre-approved credit. In *Norwest Bank, N.A. v. Orndorff (In re Orndorff)*, 162 B.R. 886 (Bankr.N.D.Okla.1994), the Court held that inferences based on an implied statement of financial condition cannot be used to except a debt from discharge under § 523(a)(2)(A) any more than the implied statement of financial condition can be used itself.

> Additionally, this court holds that Norwest did not rely upon any implied representation of an ability to repay. Banks issue credit cards in great volume because they know it is a profitable business based upon high rates of repayment and high rates of interest. Banks do not rely on implied promises to repay each time a card is properly used.

*Id.* at 890. The exceptions to this rule are: (1) use of a card after it has been revoked, (2) knowingly using a card in excess of its limitations, and (3) pre-bankruptcy spending sprees.

If the Court attempts to balance some general principles of historical fraud with modern credit card charges, the best alternative appears to be the "totality of circumstances." Although, factitious implication must be created, this theory leaves the creditor body on a more equal footing than either of the other two alternatives. However, the totality of circumstances does not include the ability of the debtor to repay at the time of the credit card transaction except to the extent that such lack of ability could lead the Court to infer that the Debtors did not intend to repay the debt because it would be financially impossible. Totality of the circumstances includes the following considerations:

1. The length of time between the charges made and the filing of the bankruptcy

2. Whether or not an attorney had been consulted before the charges were made

3. The number of charges made

4. The amount of the charges

5. The debtor's concept of his ability to repay[1]

6. Whether the charges were above the credit limit

7. Whether multiple charges were made on the same day

8. Whether the debtor was employed

9. Debtor's prospects for employment

10. Financial sophistication of the debtor

11. Whether there was a sudden change in the debtor's buying habits

12. Whether the purchase were made for necessities or luxury goods.

Under the common law requirements for fraud, it appears virtually impossible for credit card companies to show that the debtor made representations upon which the creditor relied. Perhaps that is the basis for the amendment made to § 523 by Congress in 1984. The amended section reads as follows:

> (C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,000 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor, an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act; 11 U.S.C. § 523(a)(2)(C).

This section creates a presumption of nondischargeability under certain conditions. One of the conditions is cash advances within

---

[1]. The debtor's concept is important, but it may be so unrealistic as not to be credible in relation to the debtor's actual financial situation.

60 days of filing. Presumptions are evidence or have the effect of evidence. By making a presumption of nondischargeability, the sole evidence of the charges satisfies the 5 elements of fraud. It then becomes the burden of the debtor to rebut the presumption of nondischargeability. However, the elements of fraud are conjunctive—the debtor need only rebut any one of the elements. Consequently, even though the creditor has the benefit of not having to prove reliance, the debtor may be able to show that there was no intention of deceiving the creditor. Furthermore, the debtor could adduce evidence that negates the presumption that the creditor relied on a representation of the debtor.

■ Factually, the Court finds that David L. Kitzmiller had very little or no participation in the financial affairs of the family and, therefore, could not have an intent to deceive when his wife made the choice to draw out cash advances to pay bills.

With respect to the Debtor, Marie J. Kitzmiller, the evidence is more troubling. When she drew out the cash, she knew her husband was going to be out of work in the near future and knew, or should have known, that she could not repay the credit card company on the reduced income available to the family. However, her husband had been laid off before and she financed the family affairs with credit cards until he was back to work. There was no proof that the cash advances were used for other than ordinary living expenses. This is in contrast to a situation where the debtor made purchases with the cash advances and then attempts to exempt these purchases by filing bankruptcy. At the time of the cash advances, the Debtors were living quite well. They had a home, 2 cars and a camper located on some leased hunting property. They were paying the mortgage on the home in addition to the payments for the 1994 4–Runner and the 1994 Dutchman Camper. Subsequent to the bankruptcy, the lenders repossessed the 1994 4–Runner and the 1994 Dutchman Camper.

David L. Kitzmiller has yet to find employment. His wife's belief that he would find another job within a short period of time has been proven erroneous. Even though the Court found that the Debtor (Marie E. Kitzmiller) knew or reasonably should have known that she did not have the ability to repay the advances, this in itself does not amount to deceit. The Court finds from the testimony of Marie J. Kitzmiller, including her demeanor on the stand, that she lacked scienter. She had no *mens rea.* There was no intent to deceive on the part of the Debtor. While her actions were inconsistent with her financial condition, they were not inconsistent with the financial position in which she found herself. Bills needed to be paid—the only source of readily available money was the credit card, which she used to fend off possible repossessions for as long as possible. Bankruptcy was not an alternative she considered as she made the withdrawals. Bankruptcy came only after her realization that no more funds were available. For these reasons, the Court finds the debt due and owing First Card Services, Inc. by David L. and Marie J. Kitzmiller to be **DISCHARGEABLE** and it is **SO ORDERED.**

The Clerk is directed to transmit copies of this Order to the parties in interest.