**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 30 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: KURTIS GEORGE KASPAR and
LINDA ANN KASPAR,

      Debtors,

---

BELLCO FIRST FEDERAL CREDIT
UNION,

      Plaintiff-Appellant,

v.

KURTIS GEORGE KASPAR and
LINDA ANN KASPAR,

      Defendants-Appellees.

No. 96-1462

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 95-D-1157)**

---

Barry Meinster (Karl Duppen with him on the briefs), Denver, Colorado, for Plaintiff-Appellant.

Glen R. Anstine, Denver, Colorado, for Defendants-Appellees.

---

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

This appeal presents the question of whether modern technology and business practices grounded in convenience will prevail over the strict language of statutory law. In particular, we address whether a computer generated statement of financial condition given in an application for credit neither seen nor signed by the debtor constitutes "a writing" under § 523(a)(2)(B) of the Bankruptcy Code. The Bankruptcy court concluded it does not and granted debtors, Kurtis and Linda Ann Kaspar, partial summary judgment in an adversary proceeding seeking an exception from discharge filed by appellant Bellco First Federal Credit Union. On appeal, that judgment was affirmed by the district court, and it is now before us for review. We believe the statute must be literally interpreted, and the oral statements made by the debtor which led to the computer generated form are not to be regarded as the functional equivalent of a "writing" within the meaning of § 523(a)(2)(B).

Linda Kaspar telephoned Bellco to apply for a line of credit and a credit card. During the ensuing conversation, the Bellco loan representative asked questions about Linda's financial condition, the name of her employer, her title, and salary. Linda orally responded to all of these questions, and as the answers were given, the loan representative entered the information into a loan application form on her computer screen. Linda then put her husband, Kurtis, on the phone, and he answered the same questions. The Kaspars also supplied the names of other creditors, the balances due on obligations owed those creditors as well as the monthly payments on the debts. The loan representative then read

the figures back to the Kaspars who orally verified their accuracy. Apparently, the Kaspars neither saw nor signed the application form entered into the computer. On the basis of the information in its database acquired from the Kaspars, Bellco issued them a line of credit and a MasterCard, and the Kaspars proceeded to incur fresh debt to Bellco.

Some time later, the Kaspars filed a petition for relief under Chapter 7 of the Bankruptcy Code seeking to discharge the debt to Bellco as well as debts owed to other creditors. Claiming the information supplied was fraudulently rendered, Bellco filed this adversary proceeding to have its debt declared nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (B). Stipulating to dismissal of the § 523(a)(2)(A) claims, the parties filed cross motions for summary judgment on whether the debt was nondischargeable under § 523(a)(2)(B).[1]

---

[1] 11 U.S.C. § 523 - Exceptions to discharge, states, in part, in (a)(2)(B):

> (a) A discharge ... of this title does not discharge an individual debtor from any debt --
>   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
>       (B) use of a statement in writing --
>         (i) that is materially false;
>         (ii) respecting the debtor's or an insider's financial condition;
>         (iii) on which the creditor to whom the debtor is liable for such money,
>             property, services, or credit reasonably relied; and
>         (iv) that the debtor caused to be made or published with intent to
>             deceive....

Under § 523(a)(2)(B), Bellco's burden of proof was to establish that the debtors used a "statement in writing" (1) that is materially false; (2) respecting their financial condition; (3) on which the creditor reasonably relied; and (4) which the debtors caused to be made or published with the intent to deceive. Focusing on the element of a "writing," the bankruptcy court granted debtors' motion. The court held because exceptions to discharge are narrowly construed, the computer generated loan application did not constitute a "statement in writing." *Bellco First Federal Credit Union v. Kaspar (In re Kaspar),* 200 B.R. 399 (Bankr. D. Colo. 1996). To so conclude, the bankruptcy court rejected Bellco's reliance upon *Chevy Chase Federal Savings Bank v. Graham (In re Graham)*, 122 B.R. 447, 451 (Bankr. M.D. Fla. 1990), in which a Florida bankruptcy court denied dischargeability of a credit card debt arising from a credit card which was obtained by a telephone solicitation. Although the Florida court equated the oral application with one that the debtor "caused to be made or published," the Colorado bankruptcy court found without any showing of a writing or signed document, the statements made by the Kaspars were oral and did not satisfy the express restriction to a writing found in § 523(a)(2)(B). On appeal, the district court agreed, holding the weight of authority under § 523(a)(2)(B) required a writing.

Bellco asks us to embrace *Graham* because it recognizes the purported realities of the credit industry marketplace and the cyberspace world. In *Graham*, the creditor bank telephoned debtors to solicit their joint application for a credit card. Responding to

requests for credit information, the debtors enhanced the value of their income, assets, and years of employment. Denying the discharge of this debt, the Florida bankruptcy court reasoned:

> Defendants caused a written statement regarding their financial condition to be published by providing plaintiff's telephone solicitor the financial information contained on the written application for a credit card. A written statement does not have to be physically prepared by a defendant. The requirements of § 523(a)(2)(B) are met if the existence of a written statement was caused to be prepared by the defendant.

122 B.R. at 450 (citation omitted).

Bellco now urges this case and *Graham* are factually indistinguishable except here the Kaspars solicited the application, while in *Graham* the creditor bank called the debtor; and the Kaspars orally verified the financial information they gave. Bellco urges the "relevant inquiry" is whether the debtors knew or should have known when they provided the credit information that "a written statement was prepared by the bank or provided by the bank." That is, the inquiry is whether a written statement was caused to be prepared by the debtor. Bellco contends it would be impossible for Kaspars to show they did not know the credit union was recording the information they provided. Bellco equates Kaspars' orally verifying the financial information with affirming the writing. Bellco also cites *First International Bank v. Kerbaugh (In re Kerbaugh)*, 162 B.R. 255 (Bankr. D.N.D. 1993), which relied on *Graham* to conclude that although debtors had not

filled in all of the information on the loan application, their signing the application another person prepared and later completed satisfied the written statement requirement.[2]

Bellco urges we should read the text of § 523(a)(2)(B) as one continuous thought. In that way the applicable portion would read: "Use of a statement in writing that the debtor caused to be made or published." That contextual juxtaposition would not only focus on the making and publishing of a statement, but would also recognize the intent of Congress to define a "written" statement as any statement which a debtor makes or causes to be made for the purpose of obtaining money, services, or credit. From that premise, it then follows, Bellco asserts, the computer generated form created by the Kaspars' words constitutes a written statement they caused to be made.

Further, tweaking their argument with an appeal to our modernity, Bellco advises us computers are a permanent fixture in today's business world, increasing efficiency and convenience. Given the role of computers, Bellco represents that many lenders generate loan applications over the phone as an accepted business practice. "If section 523(a)(2)(B) does not pertain to this type of transaction, then the honest public will suffer

---

[2] ***Chevy Chase Federal Savings Bank v. Graham (In re Graham)***, 122 B.R. 447 (Bankr. M.D. Fla. 1990), also relied on ***First Federal Savings & Loan Association of Rochester v. Kelley (In re Kelley)****,* 163 B.R. 27 (Bankr. E.D.N.Y. 1993), which held the writing requirement was satisfied although debtors signed a blank form that was subsequently filled in but later were given the opportunity to read over a final loan statement; and ***Hudson Valley Water Resources v. Boice (In re Boice),*** 149 B.R. 40 (Bankr. S.D.N.Y. 1992), which also held the writing requirement was satisfied when debtors stated orally and signed three incomplete written statements they owned their home.

from the consequences of lending institutions being forced to change the way they do business," Bellco declaims.

In response, the Kaspars contend the congressional intent is not what Bellco suggests, and, as a matter of sound policy, its argument should be rejected because the logical result would be to allow any oral statement to be metamorphosed into a "writing" by simply converting it into computerized data. This, debtors contend, frustrates the obvious intent of the statute. They argue it cannot be seriously believed that Congress did not intend a document be in writing before a creditor may rely upon its contents to establish a debtor's fraudulent intent.

We start our analysis with recognition of the rule that exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor. **In re Hunter,** 780 F.2d 1577,1579 (11th Cir. 1986). However, we also observe the dilemma of whether a writing can assume a form other than a document does not come to us without some non-bankruptcy legal history. Indeed, even Bellco's counsel admitted in oral argument there is an historical basis in the law of evidence which requires the documentation of statements as a predicate to actionability. We need not delve, however, into that history for solution of the issue here because it is simply a matter of unvarnished hornbook law.

To come within the exception of § 523(a)(2)(B), the statement, to be "in writing," must either have been written by the debtor, signed by the debtor, or **written by someone else but adopted and used by the debtor**. The requirement of a writing is a basic precondition to nondischargeability under section 523(a)(2)(B).

*4 Collier on Bankruptcy*, ¶ 523.08[2][a] (15th ed. 1997) (emphasis added). *See Investros Credit Corp. v. Batie*, 995 F.2d 85 (6th Cir. 1993) (financial statements submitted to closing constitute a writing); *Engler v. Van Steinburg,* 744 F.2d 1060 (4th Cir. 1984) (oral representations would not meet nondischargeability requirements). The *Engler* court stated,

> Concededly, a statement that one's assets are not encumbered is not a formal financial statement in the ordinary usage of that phrase. But Congress did not speak in terms of financial statements. Instead it referred to a much broader class of statements - those "respecting the debtor's ... financial condition." A debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition. Indeed, whether his assets are encumbered may be the most significant information about his financial condition. Consequently, the statement must be in writing to bar the debtor's discharge.

744 F.2d at 1060-61 (citation omitted).

Although we have never addressed whether a computer generated form produced from a debtor's oral statements will satisfy the definition of a "writing," we perceive distinct reasons for Congress to have intended § 524(a)(2)(B) to require a document in writing under the entire scheme of the Bankruptcy Code. As noted in *Engler*, giving a statement of financial condition is a solemn part of significant credit transactions; therefore, it is only natural that solemnity be sanctified by a document which the debtor

either prepares or sees and adopts.  In a world where important decisions relating to the extensions of credit and service will be made upon the contents of a statement relating to financial condition, too much mischief can be done by either party to the transaction were it otherwise.  Somewhere in the commercial risk allocation picture, the writing must stand as a bulwark which tends to protect both sides.

A creditor who forsakes that protection, abandoning caution and sound business practices in the name of convenience, may find itself without protection.  For example, in *In re Ward*, 857 F.2d 1082 (6th Cir. 1988), the court denied nondischargeability where the debtor filled in the credit card application and the bank issued a $2,000 credit line and credit card to "a person who was not only hopelessly insolvent, but who had recently been convicted of an embezzlement offense."  *Id.* at 1083.  The court reasoned a bank's extending that sort of risk must do some minimal investigation, a concept the Bankruptcy Code embodies.

One commenter has written, "[F]rom the perspective of the bankruptcy proceeding, it is inequitable to reward a possibly imprudent creditor who failed to detect the debtor's misrepresentation by excepting her debt from discharge, while the debtor's other more prudent creditors have their claims evaluated collectively."  Zeigler, *The Fraud Exception to Bankruptcy*, 38 Stan. L. Rev. 891, 907-08 (1986).  Other courts have noted a creditor who extends credit without proper investigation is not entitled to a judgment of nondischargeability.  ***Citibank v. Cox (In re Cox)***, 150 B.R. 807 (Bankr.

N.D. Fla. 1992); *First Card Services, Inc. v. Cronk (In re Cronk)*, 144 B.R. 903 (Bankr. M.D. Fla. 1992). This authority demonstrates a reluctance to part from the precise language of the Code to acknowledge and condone business practices which have been adopted largely for the sake of convenience.

In the information age, it is convenient to purchase goods over the telephone and use our credit cards to make a purchase and avoid a visit to a vendor. We merely give the seller our credit card number instead of signing the voucher, and our oral representations are transferred into computer data which become a debt upon which we are obliged. The seller also relies upon our oral statements for our convenience and to effect a sale that he or she might otherwise have not made. Yet, these valid transactions do not rise to the level of a statement of financial condition.

By enactment of the provisions of 11 U.S.C. § 523(a)(2)(B), Congress has conferred a special dignity on statements of that nature. They are not to be regarded in the same manner as other legitimate transactions, nor are the deceptions that may be employed in such a statement treated in the same way as other fraudulent acts in which a debtor may engage. Even though fraud is a basis for nondischargeability under other circumstances having no necessary relation to written documents, 11 U.S.C. § 523(a)(2)(A), Congress has provided deception made in statements of financial condition must be in writing before a creditor is entitled to an exception from discharge.

As noted by Justice Souter in *Field v. Mans*, ___U.S.___, 116 S. Ct. 437, 441 (1995), there is a marked distinction in origin between § 523(a)(2)(A) which arises from and is a codification of the principles of common law fraud, and § 523(a)(2)(B) whose roots are purely statutory in origin. Distinguishing the two, he said:

> The sum of all this history is two close statutory companions barring discharge. One applies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition), the other when the debt follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied.

*Id*. at 441. Can it be said any plainer? A written statement of financial condition does not mean an oral statement converted into an electronic format. Despite Bellco's argument that reasoning merely relates to the "process" by which the statement evolves while the statute pertains to the "essence"of the statement, *Fields* addresses that contention as well but in a less direct way.

Justice Souter pointed out § 523(a)(2)(B) devolves from an amendment of the Bankruptcy Act of 1898 which was adopted in its original form in 1903. Except for some narrowing of its scope, the section has existed in its current format for over ninety-four years without change. We know when it was adopted there was no device for the conveyance of written information regarding financial condition except for a document. It takes no imagination whatever, then, to assume when Congress adopted the language, "statement in writing," it meant a statement in a written document. Congress made no

statutory distinction between the "process" and the "essence" of the statement. Unequivocally, it addressed the only form of writing it knew.

Bellco argues, however, technology has changed, and we should recognize the change. But, the *statute* has not changed. It remains in the form originally conceived and enacted by Congress. It goes without saying, we are bound by the law as we find it, not as we would like it to be.

We note with some wryness that in this instance the law lags behind technology and custom, but that gap is a subject which must be addressed to the Congress and not the courts. We will not undertake to rewrite the express language of a statute merely to accommodate the commercial conveniences attributable to modern technology.

**AFFIRMED**.