**In re Jeanne Lavonne JOELSON, Debtor.**

**Stanley Cadwell, Plaintiff–Appellee,**

v.

**Jeanne Lavonne Joelson, Defendant–Appellant.**

BAP No. WY–03–020.
Bankruptcy No. 01–21544.
Adversary No. 02–01001.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

April 7, 2004.

Georg Jensen, Law Offices of Georg Jensen, Cheyenne, WY, for Jeanne Lavonne Joelson.

Lawrence E. Middaugh, Casper, WY, for Stanley Cadwell.

Before CLARK, MICHAEL, and BROWN, Bankruptcy Judges.

## OPINION

BROWN, Bankruptcy Judge.

The parties to this appeal have asked this Court to define what constitutes a "statement respecting the debtor's ... financial condition," within the meaning of 11 U.S.C. § 523(a)(2)(A).[1] The Defendant/Debtor ("Debtor") made false statements to induce Plaintiff to give her a loan. She misrepresented her identity, that she owned certain assets, and that she had a ready source of repayment for Plaintiff's loan. Her statements were made verbally and were not reduced to writing.

The bankruptcy court found that Plaintiff's claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Debtor asserts that this ruling was in error because Section 523(a)(2)(A) excepts debts from discharge based on fraud, but only if they do not involve "statements respecting the debtor's ... financial condition."[2] The Debtor contends that her statements were statements regarding her financial condition, which were required to be made in writing in order to be actionable under Section 523(a)(2). Two different interpretations exist as to what kind of statement constitutes a "statement of financial condition." Neither the Tenth Circuit nor this Court has previously adopted a definition of this phrase.

## I. Background

The facts relevant to this appeal are undisputed. Debtor did not appear at trial to dispute any of the allegations raised against her. On appeal, the Debtor has not asserted that any of the factual findings of the bankruptcy court are in error. Accordingly, we must adopt the factual findings of the lower court in their totality.

Plaintiff is a retired individual, who became acquainted with the Debtor at a café, where she was a waitress. The Debtor told Plaintiff that she needed to check on "her house" in Arizona and pick up her mother. Plaintiff agreed to drive Debtor from Casper, Wyoming to Scottsdale, Arizona. While in Arizona, the occupant of the house gave the Debtor money, which the Debtor represented to Plaintiff was payment of "rent." She further represented to Plaintiff that she owned the Arizona property.

On their return, the Debtor informed Plaintiff that the Arizona property was in foreclosure and that she needed a loan of over $50,000 to pay off the foreclosing lender. In connection with her solicitation of a loan from Plaintiff, she represented that her brother was going to loan her these funds, and that when he did, she would use her brother's funds to repay Plaintiff. In the meantime, she promised Plaintiff that she would sign a promissory note and give him collateral to secure his loan. She represented that she also owned other residences, a motel, and several antique cars. She showed Plaintiff

1. 11 U.S.C. § 523(a)(2)(A) provides that:

   [a] discharge under [11 U.S.C. § 727] does not discharge an individual debtor from any debt—
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

2. Unless otherwise specified, all references to "Sections" are to Title 11, United States Code.

these other properties, including a storage facility that housed the cars.

The parties traveled back to Arizona, where they met with the foreclosing lender's representatives. In the course of these dealings, Plaintiff became aware that the Arizona property was titled in the name of "Joelene Joelson," not "Jeanne Joelson." The Debtor, however, represented to Plaintiff that she and Joelene Joelson were the same person. Plaintiff then loaned her the funds necessary to pay off the foreclosing lender.

Although the Debtor gave Plaintiff a promissory note, she did not give him any collateral to secure the loan. In fact, she did not own the Arizona property, the other residences, the motel, or the antique cars. "Joelene Joelson" is not the Debtor, but is instead her sister-in-law. She never obtained a loan from her brother. The bankruptcy court found all of her representations to be "fraudulent and false."[3]

## II. Appellate Jurisdiction

The Debtor filed a timely notice of appeal under Fed. R. Bankr.P. 8002. The Bankruptcy Court's Order granting judgment in favor of the Plaintiff is a final, appealable order for purposes of this Court's jurisdiction.[4] With the consent of the parties, this Court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit.[5] Neither party has opted to have this appeal heard by the United States District Court for the District of Wyoming and, therefore, they are deemed to have consented to the jurisdiction of this Court.[6]

## III. Standard of Review

■ Where, as here, the salient facts are undisputed, we conduct a *de novo* review of the lower court's conclusions of law.[7] When conducting a *de novo* review, the appellate court is not constrained by the trial court's conclusions, and may affirm the trial court on any legal ground supported by the record.[8]

## IV. Discussion

■ Section 523(a)(2)(A) excepts from discharge claims arising from "false pretenses, a false representation, or actual fraud," but it expressly excludes from its coverage "a statement respecting the debtor's or an insider's financial condition." A claim based on a false statement of financial condition is instead covered by Section 523(a)(2)(B), which sets forth separate criteria for its application, including a requirement that the statement must have been made in writing.[9] If a "statement of

---

3. Appellant's App. at 11.

4. 28 U.S.C. § 158; *Gregory v. Zubrod (In re Gregory)*, 245 B.R. 171, 172 (10th Cir. BAP 2000), *aff'd*, 246 F.3d 681 (10th Cir.2000) (unpublished table disposition).

5. 28 U.S.C. § 158(a)(1), (b)(1), (c)(1).

6. 28 U.S.C. § 158(c); Fed. R. Bankr.P. 8001(e); 10th Cir. BAP L.R. 8001-1.

7. *Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1255 (10th Cir.1999).

8. *See Wolfgang v. Mid–America Motorsports, Inc.*, 111 F.3d 1515, 1524 (10th Cir.1997).

9. 11 U.S.C. § 523(a)(2)(B) provides that:

> [a] discharge under [11 U.S.C. § 727] does not discharge an individual debtor from any debt—
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> . . .
> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

financial condition" is made, it may be false and made with intent to deceive, but if it is not made in writing, then it does not give rise to a claim of nondischargeability.

In defining what constitutes a "statement of financial condition," Plaintiff argues that the Court should adopt a narrow or strict construction, which requires that the statements provide information "as to [a debtor's] overall financial health."[10] Under this definition, the statement need not be made in the form of a formal financial statement, but it must purport to state the debtor's net worth, his overall financial condition, or his ability to generate income.[11] By way of contrast, the broad interpretation, which the Debtor urges us to adopt, encompasses any statement that reflects on a single aspect of the debtor's financial condition and need not reflect the debtor's overall financial condition.[12] Under the broad interpretation, statements "'concerning the condition or quality of a single asset or liability impacting on the debtor's financial picture'" will suffice.[13]

While no direct Tenth Circuit precedent exists to guide our interpretation, in *Bellco First Federal Credit Union v. Kaspar (In re Kaspar)*,[14] the Tenth Circuit grappled with a related issue. The court had to determine what satisfies the requirement of a "writing" in order to render a false statement of financial condition actionable. In *Bellco*, the creditor had conducted a telephone interview of the debtor and then used the debtor's responses to complete an electronic loan application. This loan application was not prepared by the debtor, did not bear the debtor's signature, and was not seen and adopted by the debtor. The bankruptcy court found that the debtor had not made the misrepresentations in "writing" and the debt was, therefore, dischargeable. Both the district court and Tenth Circuit affirmed.

In the course of interpreting the term "writing," the Tenth Circuit made general statements regarding the nature of statements of financial condition, quoting from a Fourth Circuit decision:

> "But Congress did not speak in terms of financial statements. Instead it referred to a much broader class of statements—those 'respecting the debtor's ... financial condition.' A debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition."[15]

It also made general statements regarding the purpose behind the requirement of a writing:

> [G]iving a statement of financial condition is a solemn part of significant credit transactions; therefore, it is only natural that solemnity be sanctified by a document which the debtor either prepares or sees and adopts.... [T]oo much mischief can be done by either party to the transaction were it otherwise. Somewhere in the commercial risk allocation picture, the writing must

---

(iv) that the debtor caused to be made or published with intent to deceive; . . . .

10.  *Norcross v. Ransford (In re Ransford)*, 202 B.R. 1, 4 (Bankr.D.Mass.1996).

11.  *Skull Valley Band of Goshute Indians v. Chivers (In re Chivers)*, 275 B.R. 606, 616 (Bankr.D.Utah 2002).

12.  *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 502 (Bankr.S.D.N.Y.1999).

13.  *Id.* (quoting *Beneficial Nat'l Bank v. Priestley (In re Priestley)*, 201 B.R. 875, 882 (Bankr. D.Del.1996))

14.  125 F.3d 1358 (10th Cir.1997).

15.  *Id.* at 1361 (*quoting Engler v. Van Steinburg*, 744 F.2d 1060, 1061 (4th Cir.1984)).

stand as a bulwark which tends to protect both sides.[16]

These general statements lend support to a broad interpretation and, while they may not be essential to the Tenth Circuit's determination, we do not summarily dismiss them.

On the other hand, the United States Supreme Court has made general observations to the contrary. In *Field v. Mans*,[17] the court engaged in a comparison of Sections 523(a)(2)(A) and (B), in the context of determining whether a fraud claim under Section 523(a)(2)(A) required a showing of merely "justifiable reliance" or the more stringent standard of "reasonable reliance" expressly required by Section 523(a)(2)(B). It referred to the former statute's derivation from, and grounding in, the "common-law torts" of fraud, false pretenses and false representation. It contrasted Section 523(a)(2)(A) and (B) claims: "the former refer to common-law torts, and the latter do not."[18] It exhorted courts to derive Section 523(a)(2)(A)'s meaning from widely-accepted distillations of the common law, such as the Restatement (Second) of Torts (1976).[19] It indicated that Section 523(a)(2)(B) should be strictly construed "to keep this exception to dischargeability from swallowing most of the rule."[20] Furthermore, throughout the opinion, the court referred to Section 523(a)(2)(B)'s application to "false financial statements."[21]

The Supreme Court gave as an example of "justifiable reliance" in connection with a common law fraud claim, the illustration of:

a seller of land who says it is free of encumbrances; according to the Restatement, a buyer's reliance on this factual representation is justifiable, even if he could have "walk[ed] across the street to the office of the register of deeds in the courthouse" and easily have learned of an unsatisfied mortgage.[22]

Under the broad interpretation, the misrepresentation set forth in this illustration fits within the definition of a statement of financial condition because it pertains to an aspect of the debtor's financial condition. The Supreme Court, however, used it as an example of a Section 523(a)(2)(A) claim, not a Section 523(a)(2)(B) claim.

Based on these general observations alone, we could conclude that these courts adhere to contrary interpretations. This only illustrates the danger of placing too much weight on statements of general observation. Were we to do so here, we would miss a consistent thread that runs through both decisions. The Supreme Court queried: "why should the rule be different when fraud is carried to the point of a written financial statement?"[23] It found its answer:

tied to the peculiar potential of financial statements to be misused not just by debtors, but by creditors who know their bankruptcy law. The House Report on the Act suggests that Congress wanted to moderate the burden on individuals who submitted false financial statements, not because lies about financial condition are less blameworthy than others, but because the relative equities

---

16. *Id.*

17. 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

18. *Id.* at 69, 116 S.Ct. 437.

19. *Id.* at 70, 116 S.Ct. 437.

20. *Id.* at 69, 116 S.Ct. 437.

21. *Id.* at 64–65, 65 n. 6, 76, 77 n. 13, 116 S.Ct. 437.

22. *Id.* at 70, 116 S.Ct. 437.

23. *Id.* at 76, 116 S.Ct. 437.

might be affected by practices of consumer finance companies, which sometimes have encouraged such falsity by their borrowers for the very purpose of insulating their own claims from discharge.[24]

Similarly, in *Bellco*, the Tenth Circuit demonstrated its reluctance to adopt any interpretation of Section 523(a)(2)(B) that would lessen the creditor's burden to satisfy all of the required elements of this statute.[25] It sought to limit the definition of a "writing" and, therefore, made it more difficult for a creditor to misuse this section. It specifically referred to credit card transactions in its illustrations. Lurking beneath both decisions is the notion that Section 523(a)(2)(B) should be interpreted in a light that does not encourage predatory lending practices.

The legislative history of the predecessor to Section 523(a)(2) sheds additional light on the statute's intended use. The Bankruptcy Act of 1898, as amended, employed the phrase "materially false statement in writing respecting his financial condition" in both its § 17(a)(2), as grounds for a claim for nondischargeability, and in its § 14(c), as a basis for a complete denial of discharge.[26] By 1960, Congress amended § 14(c), to eliminate the use of a false financial statement as a ground for denial of discharge, except in connection with business transactions.[27] The legislative history reflects the following reasons for the change:

> The committee believes that complete denial of a discharge is too severe a penalty in the case of the individual noncommercial bankrupt. It is also a penalty which experience has shown to be subject to abuse.... Testimony before the Subcommittee ... indicates that unscrupulous lenders have frequently condoned, or even encouraged, the issuance of statements omitting debts with the deliberate intention of obtaining a false agreement for use in the event that the borrower subsequently goes into bankruptcy.
>
> ... [The] right to bar the discharge completely results in a windfall for other creditors who were not even aware of such a statement.... This result is not required to protect a creditor who has relied on a false financial statement since under section 17a(2) that particular debt is not dischargeable.
>
> ....
>
> The situation is somewhat different in the case of a business bankrupt. The businessman is more likely to be aware of the severe consequences to him of issuing a false financial statement.... Furthermore, the financial statement issued by a businessman is frequently for the purpose of establishing credit standing in the community.[28]

The repeated references to "false financial statements" and the reference to establishing "credit standing" lend support to a narrow interpretation of a false statement of "financial condition" as used in both

---

24. *Id.* at 76–77, 116 S.Ct. 437.

25. *Bellco*, 125 F.3d at 1362.

26. The Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (1898).

27. Act of July 12, 1960, Pub.L. No. 86–621, 74 Stat. 409 (codified as amended at 11 U.S.C. § 32 (1960)). The Bankruptcy Reform Act of 1978 eliminated any use of false statements of financial condition as a ground for a complete denial of discharge. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598 (1978) (enacted November 6, 1978).

28. S.Rep. No. 1688, at 2–3 (1960), H.R.Rep. No. 1111, at 2–3 (1959), *reprinted in* 1960 U.S.C.C.A.N. 2954, 2955.

Section 523(a)(2)(B) and its predecessor. This legislative history indicates that the intended use for this phrase was to cover statements made in the context of assessing overall creditworthiness, such as statements reflecting net worth or ability to pay.

The Supreme Court expressed its concern that Section 523(a)(2)(B) be strictly construed "to keep this exception to dischargeability from swallowing most of the rule."[29] If any statement respecting any aspect of a debtor's financial condition is covered by Section 523(a)(2)(B), then even the mere writing of a check, when the debtor knows there are insufficient funds to cover the check, would fit under the umbrella of Section 523(a)(2)(B).[30] "However, that means extensive case law addressing the dischargeability of claims for bad checks under § 523(a)(2)(A) is incorrect."[31]

■ Neither interpretation is without its perils. In the absence of a controlling precedent, we agree with the court in *Skull Valley Band of Goshute Indians v. Chivers (In re Chivers)*[32] that, on balance, the better approach is the narrow interpretation that defines a statement of financial condition to be a statement of a debtor's net worth, overall financial health, or ability to generate income. This definition is "most consistent with the Supreme Court's interpretation of the statute, it is consistent with the history of the reason for the creation of the statute, [and] it strictly construes § 523(a)(2)(B) against

the creditor and liberally in favor of the debtor...."[33]

In applying this narrow definition to the facts of the present case, we note that the nature of the representations made by the Debtor are threefold. First, she made representations as to her intention and ability to obtain financing from her brother to be used to repay Plaintiff's loan (the "Repayment Representations"). Secondly, she made representations as to her ownership of certain assets (the "Ownership Representations"). Finally, she represented that she and Joelene Joelson were one and the same person (the "Identity Representation"). The Identity Representation is significant here because it relates to whether she held title to certain property. Thus, each category of misrepresentation has some bearing on an aspect of her financial condition.

■ The Repayment Representations of the Debtor pertain to her ability to generate income to repay the loan. Even the narrow interpretation includes statements of "ability to generate income."[34] As such, they must meet the "writing" criteria of Section 523(a)(2)(B) in order to establish a basis for nondischargeability. Because the Repayment Representations were not made in writing, they are not actionable under Section 523.

■ On the other hand, while both the Ownership and Identity Representations pertain to an aspect of the Debtor's finan-

**29.** *Field v. Mans,* 516 U.S. at 69, 116 S.Ct. 437.

**30.** *Jokay Co. v. Mercado (In re Mercado),* 144 B.R. 879, 883–84 (Bankr.C.D.Cal.1992).

**31.** *Id.*

**32.** 275 B.R. 606, 615 (Bankr.D.Utah 2002).

**33.** *Id.*

**34.** *Id.* For cases specifically holding that statements regarding ability to repay a loan constitute statements of financial condition subject to Section 523(a)(2)(B), *see Commercial Money Center, Inc. v. Sacco (In re Sacco),* 270 B.R. 382, 386 (Bankr.W.D.Pa.2001); *First Card Servs., Inc. v. Kitzmiller (In re Kitzmiller),* 206 B.R. 424, 426 (Bankr.N.D.W.Va. 1997).

cial condition, they do not constitute statements as to overall financial health, net worth, or ability to generate income. Thus, these statements do not fall under our definition of "statement of financial condition." Consequently, we conclude that the bankruptcy court did not err by holding that they were actionable under Section 523(a)(2)(A).

## V. Conclusion

For the foregoing reasons, the judgment in favor of Plaintiff, determining the debt owed by Debtor to Plaintiff to be non-dischargeable under Section 523(a)(2)(A), is AFFIRMED.

MICHAEL, Bankruptcy Judge, Concurring.

Judges sitting on a three-judge panel should, as a matter of course, strive for open-minded unanimity. In this case, however, I must to a degree respectfully disagree with my colleagues. My objection is not with the result, with which I concur, but with the analysis the majority uses to reach it.

For almost 25 years courts have been called upon by litigants to address the issue raised in this appeal; namely, what constitutes a "statement regarding financial condition" for purposes of § 523(a).[1] Courts have adopted two separate views, with separate justifications for each view. In *Skull Valley Band of Goshute Indians v. Chivers (In re Chivers)*,[2] the court undertook a detailed analysis of the two views and determined that the "strict interpretation" of the phrase "statement of

financial condition" was appropriate. The *Chivers* court found that:

> the better approach is the strict interpretation of § 523(a)(2)(B) that requires a false written statement to describe the debtor's net worth, overall financial health, or ability to generate income. It is the most consistent with the Supreme Court's interpretation of the statute, it is consistent with the history of the reason for the creation of the statute, it strictly construes § 523(a)(2)(B) against the creditor and liberally in favor of the debtor, and it resolves the conflict raised in the present case in a way that reconciles §§ 523(a)(2)(A) and (B) without impairing their effectiveness.[3]

I find this analysis persuasive and would affirm the ruling of the lower court for the reasons outlined in *Chivers*.

Instead of addressing this reasoning, the majority has chosen to focus on *Bellco First Federal Credit Union v. Kaspar (In re Kaspar)*.[4] Nothing in *Bellco* dealt with the definition of what constituted a statement regarding financial condition; instead, the decision focused upon whether a statement regarding a debtor's financial condition should be considered oral or written. The facts in *Bellco* are so dissimilar, in my opinion, as to preclude its applicability to the present case. I respectfully decline to join in the majority's analysis in this regard.

I also cannot join the majority in its use of legislative history to support its decision. As the United States Supreme Court has made clear, courts interpreting provisions of the Bankruptcy Code must first look to the plain language of the statute.[5] A court should only consider al-

---

**1.** *See generally Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 112–13 (2d Cir.2002) (citing numerous cases).

**2.** 275 B.R. 606, 614–16 (Bankr.D.Utah 2002).

**3.** *Id.* at 615–16.

**4.** 125 F.3d 1358 (10th Cir.1997).

**5.** *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

ternative interpretations when the literal application of the statute would produce absurd results [6] or if the literal application produces a result demonstrably at odds with the intentions of the statute's drafters.[7] In this instance, the majority has failed to articulate why the cited legislative history is relevant. Even if one assumed that § 523(a)(2)(A) was ambiguous or produced an absurd result, previous courts have generally agreed that the section's legislative history provides little guidance.[8]

I am equally troubled by the majority's reliance upon legislative history regarding the predecessor to § 523(a)(2)(A) under the Bankruptcy Act of 1898. If the legislative history of § 523(a)(2)(A) has little bearing on it meaning, it is hard for me to grasp the relevance of previous legislative history. Furthermore, as the Supreme Court has observed, it is the intent of the Congress that passed the statute, and not that of previous Congresses, that controls.[9] For that reason, I cannot find comfort in legislative history that did not even contemplate the existence of the statute at issue.

For the foregoing reasons, I concur in the judgment.

---

**6.** *Holy Trinity Church v. United States,* 143 U.S. 457, 460, 12 S.Ct. 511, 36 L.Ed. 226 (1892).

**7.** *Ron Pair,* 489 U.S. at 242, 109 S.Ct. 1026.

**8.** *See, e.g., Armbrustmacher v. Redburn (In re Redburn),* 202 B.R. 917, 926–27 (Bankr. W.D.Mich.1996).

**9.** *Int'l Broth. of Teamsters v. United States,* 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).