IN RE JERRY LEE SNYDER and PAMELA ANN SNYDER, Chapter 7 Debtors.
SHEILA SCHLESSELMAN, Defendant-Counter-Claimant-Appellee.
v.
PAMELA ANN SNYDER, Plaintiff-Counter-Defendant-Appellant,
BAP No. CO-08-101, Bankr. No. 05-18123-SBB, Adv. No. 06-01544-SBB
United States Bankruptcy Appellate Panel, Tenth Circuit.
June 11, 2009.
Before CORNISH, Chief Judge, MICHAEL, and KARLIN, Bankruptcy Judges.[1]

OPINION[*]
MICHAEL, Bankruptcy Judge.
Debtor Pamela M. Snyder ("Debtor") appeals an order and judgment of the bankruptcy court entering a money judgment in favor of creditor Sheila Schlesselman ("Creditor"), and determining that said judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Having reviewed the record and applicable law, the bankruptcy court's order and judgment are affirmed.[2]

I. BACKGROUND FACTS
Debtor and her husband filed for Chapter 13 relief on April 12, 2005. Debtor's daughter ("Daughter") was arrested on April 22, 2005. On the same day, Debtor met with Creditor to secure two bail bonds totaling $3,000 for Daughter's release from jail.[3] During their meeting, Debtor completed an indemnity agreement and a collateral disclosure statement, and also provided Creditor with employment information and a current bank statement.[4] However, Creditor permitted Debtor to take the "indemnitor application" home with her to complete and then return.[5] The indemnitor application solicits financial information, including whether the indemnitor has ever filed bankruptcy.[6]
Debtor paid Creditor a premium of $481 for her services in connection with posting the bonds, and also tendered a $3,000 undated check as collateral to secure the bonds. Debtor did not disclose to Creditor that she was currently in bankruptcy.[7] Creditor posted the bail bonds, and Daughter was released from jail.[8] Debtor never returned the indemnitor application, notwithstanding Creditor's repeated follow-up calls and provision of subsequent copies of the application to facilitate its completion.[9]
Daughter failed to appear at her scheduled court hearing on July 22, 2005.[10] Creditor issued a bail forfeiture notice to Debtor on July 25, 2005.[11] On August 3, 2005, Creditor apprehended Daughter and turned her over to the proper authorities.[12] Creditor incurred expenses locating and apprehending Daughter.[13] To recoup her expenses, Creditor dated and deposited Debtor's $3,000 collateral check on August 3, 2005.[14] The check was returned by the bank a week later for insufficient funds.[15]
On August 29, 2005, Debtor converted her Chapter 13 bankruptcy case to one under Chapter 7. Debtor did not schedule the debt to Creditor, or report it in any other manner.[16] The Trustee filed a no asset report on October 8, 2005. On December 14, 2005, the bankruptcy court entered a discharge.
On December 15, 2005, Creditor began collection efforts on the debt by filing a state court action. Debtor's attorney then sent Creditor a letter dated December 20, 2005, indicating the debt had been discharged in bankruptcy. Ultimately, the state court held the collection proceedings in abeyance pending advice from the bankruptcy court regarding the status of the debt.
On April 26, 2006, Debtor filed this adversary proceeding seeking declaratory relief that the debt owed to Creditor had been discharged. Additionally, Debtor brought claims against Creditor and her attorney for willful violation of the automatic stay, willful violation of the discharge injunction, and violation of the Fair Debt Collection Practices Act.[17] On November 16, 2006, after briefing and a hearing, the bankruptcy court determined that it had jurisdiction over the adversary proceeding. Creditor then filed a counterclaim pursuant to 11 U.S.C. § 523,[18] asserting the debt was non-dischargeable.
The bankruptcy court scheduled a trial and heard testimony regarding Debtor's claims on August 2, 2007, which continued on November 29, 2007. At the end of the presentation of Debtor's case, Creditor made an oral motion for directed verdict, which was followed by a formal written version filed on December 14, 2007. The bankruptcy court granted Creditor's motion for directed verdict on Debtor's claims by order dated April 18, 2008.[19]
A subsequent hearing on Creditor's counterclaim regarding nondischargeability of the debt was held on November 25, 2008. Debtor did not appear at this hearing.[20] The bankruptcy court heard the testimony of Creditor and a paralegal who had assisted her with collection efforts on the debt, and also reviewed exhibits previously admitted into evidence.[21] At the conclusion of the hearing, the bankruptcy court ruled from the bench.[22]
The bankruptcy court awarded Creditor costs in the sum of $6,972.82, damages in the amount of $10, and fees for Creditor's paralegal and attorney in the amounts of $3,500 and $7,500, respectively. Further, the bankruptcy court ordered that the sums were non-dischargeable pursuant to § 523(a)(2)(A) and (a)(3). The bankruptcy court's oral ruling was documented by an order and a judgment entered the same day. Debtor timely appealed.

II. APPELLATE JURISDICTION
This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[23] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado. The parties have thus consented to appellate review by this Court.
A decision is considered final "if it `ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[24] In this case, the order and judgment of the bankruptcy court terminated the adversary proceeding. Nothing remains for the bankruptcy court's consideration. Thus, the decision is final for purposes of review.

III. STANDARD OF REVIEW
We review the bankruptcy court's factual findings in support of its decision for clear error.[25] A bankruptcy court's findings concerning fraudulent intent and justifiable reliance are factual, and therefore subject to review under a clearly erroneous standard.[26] A factual finding is "clearly erroneous" when "`it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'"[27] Additionally, in reviewing findings of fact, this Court is compelled to give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[28]

IV. ANALYSIS
At trial, Creditor had the burden of proving each element of her § 523(a)(2)(A) claim by a preponderance of the evidence.[29] The elements of a § 523(a)(2)(A) claim are: 1) the debtor made a false representation; 2) the debtor made the representation with the intent to deceive the creditor; 3) the creditor relied on the debtor's representation; 4) the creditor's reliance was justifiable; and 5) the creditor was damaged as a proximate result.[30] A debtor's silence regarding a material fact has been held to constitute a false representation actionable under § 523(a)(2)(A).[31]
We interpret Debtor's brief on appeal to raise two assertions of error.[32] First, it appears Debtor believes this case should be considered under § 523(a)(2)(B), and therefore that the reasonable reliance standard, as opposed to justifiable reliance, is applicable.[33] Second, Debtor contends the bankruptcy court erred in finding justifiable reliance on Creditor's part.[34] Neither argument is persuasive.
Debtor is correct that if § 523(a)(2)(B) were applicable, Creditor would be required to demonstrate the higher standard of reasonable reliance. However, we disagree that this case falls under § 523(a)(2)(B). This Court has adopted the "strict" or "narrow" construction of a statement of financial condition, under which "the statement need not be made in the form of a formal financial statement, but it must purport to state the debtor's net worth, his overall financial condition, or his ability to generate income."[35] In this case, the bankruptcy court found that Debtor's omission of the material fact that she was currently in bankruptcy was actionable, not the Debtor's failure to complete and return the "indemnitor agreement." Therefore, § 523(a)(2)(A), and not § 523(a)(2)(B), is the appropriate provision, and Creditor need only demonstrate justifiable reliance.
Regarding the establishment of justifiable reliance, Debtor essentially argues that when the indemnitor application was not completed and returned, Creditor ignored a "red flag" that would have caused the prudent lender to question whether credit should be granted.[36] However, justifiable reliance does not incorporate the "prudent person" standard. Rather, it is a subjective standard and
does not require the creditor prove he acted consistent with ordinary care and prudence. Instead, "[j]ustification is a matter of the qualities and characteristics of the particular [creditor], and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." A creditor is only required to make an investigation beyond the representations given where "under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived."[37]
In applying this standard, the bankruptcy court indicated the question was a "difficult and close" one, but found justifiable reliance, stating:
[Debtor] was committing and obligating herself and recognizing a number of responsibilities and implicitly making representations as to dealing in good faith to get a bond for her daughter[.]
There is no sign here, and it is not fair or safe to assume somebody you're talking with is in bankruptcy. And so there was no outward sign that [Debtor] had previously filed for bankruptcy. There were no flags, there was no missing eye of the horse.[38]
As many bankruptcy courts have opined, the justifiable reliance standard is a "low," "fairly low," or "relatively low" standard,[39] and we see no error here.
Debtor also argues there is no justifiable reliance because Creditor posted the bonds without receiving the completed indemnitor application from Debtor, and without conducting a search of bankruptcy filings. In other words, Creditor cannot show justifiable reliance because she did not follow her usual business policies in posting the bonds.[40] We disagree.
In Sanford Institution for Savings v. Gallo, the United States Court of Appeals for the First Circuit found that a creditor can demonstrate justifiable reliance even if its course of action would have differed had an investigation, one not involving considerable trouble or expense, been conducted.[41] In that case, a bank extended a standby letter of credit in exchange for a second mortgage on a customer's residence without performing its customary title search to verify ownership. The First Circuit opined that
lack of care does not exculpate [a debtor's] fraud and dishonesty. The court should not reward [debtor] for his fraud because the [creditor] should have been more circumspect. [Creditor's] negligence does not relieve [debtor] of continued responsibility for his intentional tort.[42]
The First Circuit held there was justifiable reliance, notwithstanding that the sophisticated creditor could have walked across the street and examined readily available public records.[43]
As set forth above, justifiable reliance is a factual determination that this Court reviews under the clearly erroneous standard, and "justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case." Further, this Court must give deference to the opportunity of the bankruptcy court to judge the credibility of the witnesses. On appeal, Debtor presents nothing that leaves us "with the definite and firm conviction that a mistake has been made" by the bankruptcy court.

V. CONCLUSION
On appeal, Debtor has not demonstrated that the bankruptcy court committed clear error. The order and judgment of the bankruptcy court are affirmed.
NOTES
[1] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. Fed. R. Bankr. P. 8012. The case is therefore ordered submitted without oral argument.
[*] This unpublished opinion is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018-6(a).
[2] Additionally, we must rule on an outstanding motion filed by Debtor. After Debtor filed her brief, on March 24, 2009, Creditor filed a "Statement of Appellees" ("Statement"). The Statement informs the Court that no appellate brief will be filed, but then proceeds to make argument and recite facts not contained in the record on appeal. On March 25, 2009, Debtor responded to the Statement by filing a "Motion to Strike Statement of Appellees." The Debtor's Motion to Strike is hereby GRANTED.
[3] Plaintiff's and Defendant's Statement of Uncontested and Stipulated Facts ("Stipulated Facts") at ¶ 29, in Appellant's App. at 51.
[4] Id. at ¶ 31.
[5] Transcript of Proceedings held November 25, 2008 ("Tr."), at pp. 6-8, in Appellant's App. at 62-64. Creditor testified that during their meeting, Debtor stated that her husband was at home with Daughter's children, that he and the grandchildren were sick, and that she needed to get back to them as soon as possible. Id.
[6] See Tr. at 10, in Appellant's App. at 66.
[7] Stipulated Facts at ¶ 24, in Appellant's App. at 50.
[8] Id. at ¶ 34, in Appellant's App. at 52.
[9] Tr. at 8 & 10-11, in Appellant's App. at 64 & 66-67.
[10] Stipulated Facts at ¶ 35, in Appellant's App. at 52.
[11] Id.
[12] Id. at ¶ 36.
[13] Id. at ¶ 37.
[14] Id. at ¶ 38.
[15] Id. at ¶ 39.
[16] Id. at ¶¶ 5 & 6, in Appellant's App. at 49.
[17] See Verified Complaint, in Appellant's App. at 27.
[18] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.
[19] See Docket No. 192, in Appellant's App. at 4.
[20] Tr. at 3, in Appellant's App. at 59.
[21] The exhibits are not a part of the record on appeal.
[22] The bankruptcy court's ruling begins at Tr. at 91, in Appellant's App. at 147.
[23] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002.
[24] Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).
[25] Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990).
[26] Holaday v. Seay (In re Seay), 215 B.R. 780, 788 (10th Cir. BAP 1997); Via Christi Reg'l Med. Ctr. v. Budig (In re Budig), 240 B.R. 397, 399 (D. Kan. 1999). But see Sanford Inst. for Savs. v. Gallo, 156 F.3d 71, 74 (1st Cir. 1998) ("This case presents a sole legal issue: namely, whether the bankruptcy court properly applied to the facts the `justifiable reliance' element of the fraud interpretation announced by the Court in Field v. Mans[.] Thus, this Court exercises plenary review.").
[27] Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185 (quoting LeMaire ex rel. LeMaire v. United States, 826 F.2d 949, 953 (10th Cir. 1987)).
[28] Fed. R. Bankr. P. 8013.
[29] Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1373 (10th Cir. 1996).
[30] Id. (citing Grogan v. Garner, 498 U.S. 279, 287 (1991)), as modified by Field v. Mans, 516 U.S. 59, 70 (1995). In Mans, the United States Supreme Court adopted the same test, except that the reliance standard to be used is the less stringent subjective standard of "justifiable" reliance, rather than the objective standard of "reasonable" reliance. Notwithstanding the decision of the Tenth Circuit in Young, this Court will use the justifiable reliance standard adopted by the United States Supreme Court.
[31] Merchant's Nat'l Bank v. Moen (In re Moen), 238 B.R. 785, 791 (8th Cir. BAP 1999).
[32] Debtor does not take issue with the amount of costs, damages, or fees awarded to Creditor.
[33] Appellant's Br. at 14-16.
[34] Appellant's Br. at 11-14.
[35] Cadwell v. Joelson (In re Joelson), 307 B.R. 689, 693-96 (10th Cir. BAP 2004), aff'd, 427 F.3d 700 (10th Cir. 2005) (citing Skull Valley Band of Goshute Indians v. Chivers (In re Chivers), 275 B.R. 606, 615 (Bankr. D. Utah 2002)).
[36] Appellant's Br. at 11.
[37] William W. Barney, M.D. P.C. Retirement Fund v. Perkins (In re Perkins), 298 B.R. 778, 792 (Bankr. D. Utah 2003) (quoting Field v. Mans, 516 U.S. 59, 70-71 (1995)) (footnote omitted).
[38] Tr. at 102-103, in Appellant's App. at 158-59. See Field v. Mans, 516 U.S. at 71 (quoting Restatement (Second) of Torts § 541 cmt. a (1971)).
[39] See, e.g., Sanford Inst. for Savs. v. Gallo, 156 F.3d 71, 74 (1st Cir. 1998); Guske v. Guske (In re Guske), 243 B.R. 359, 363 (8th Cir. BAP 2000).
[40] Appellant's Br. at 13-14.
[41] Sanford Inst. for Savs. v. Gallo, 156 F.3d 71, 75 (1st Cir. 1998).
[42] Id. at 76.
[43] Id. at 75-76 (citing Restatement (Second) of Torts § 540, illus. 1 (1971)).