In re Chad M. GLASGOW, SS#: XXX–XX–5604

and

Valerie Glasgow, SS#: XXX–XX–4644, Debtors.

GDO Investments, Inc., Plaintiff,

v.

Chad M. Glasgow and Valerie Glasgow, Defendants.

Bankruptcy No. 05–44131–SSB. Adversary No. 06–01334–SBB.

United States Bankruptcy Court, D. Colorado.

June 7, 2007.

---

Stewart Olive, March Olive & Pharris, LLC, Fort Collins, CO, for Plaintiff.

Daniel J. Garfield and Steven E. Ableman, Brownstein Hyatt Farber Schreck, P.C., Denver, CO, Defendants.

## MEMORANDUM OPINION AND ORDER DENYING IN PART, AND GRANTING IN PART, DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtor–Defendants' Motion for Partial Summary Judgment filed on March 13, 2007 (Docket # 53), Creditor–Plaintiff's Response filed on April 12, 2007 (Docket # 64), and Defendants' Reply filed on April

20, 2007 (Docket # 67). The Court, having reviewed the file and being advised in the matter, makes the following findings of fact, conclusions of law and Order.

The Defendants seek an order granting Partial Summary Judgment on the first two of the three claims for relief in the Plaintiff's Amended Complaint. Specifically, the Defendants seek Summary Judgment on Plaintiff's first claim for relief brought under 11 U.S.C. § 523(a)(2)(A) for fraud and the second claim for relief under 11 U.S.C. § 523(a)(2)(B) for false financial statements. The remaining claim for relief is under 11 U.S.C. § 523(a)(6) for conversion.

Generally, this case involves a series of transactions and multiple communications, over a period of eight years, between the Plaintiff, which was selling, leasing and financing day care centers to the Defendants, who were in turn buying, leasing and managing the centers. All three claims relate primarily to two promissory notes entered into by the Defendants' business, Ridgewood Day School Child Care Center, Inc., and the Defendants' personal guarantees and security agreements related to those notes.

## I. Standard for Summary Judgment

Summary judgment is to be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] The moving party bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[2] This Court will review the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party—here the Plaintiff.[3]

## II. Material Facts that Exist Without Substantial Controversy

In accordance with FED.R.CIV.P. 56(d), if summary judgment is not granted upon the whole case or for all the relief asked, this Court is to "if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." The parties appear to agree on the following facts:

1. Valerie and Chad Glasgow ("Defendants") were the sole owners and officers of Ridgewood Day School Child Care Center, Inc. ("Ridgewood"), which operated two day care centers in Fort Collins, Colorado, from 1998 through 2005.[4] One day care center was located on Avondale Court (the "Avondale Center"), the other was located on Prospect Road (the "Prospect Center"), collectively, the "Day Care Centers."[5]

2. Gene Oster and his wife, Diane, are the sole owners of GDO Investments, Inc. ("Plaintiff").[6]

3. On November 26, 1997, Plaintiff and Ridgewood entered into a land installment contract (unconditionally guaranteed by the Defendants), in which Ridgewood was

---

1. FED.R.CIV.P. 56(d) made applicable to adversary proceedings by FED.R.BANKR.P. 7056.

2. Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir.2000).

3. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir.1999).

4. Pretrial Statement, Stipulated Facts, ¶ 1.

5. Pretrial Statement, Stipulated Facts, ¶ 1.

6. Pretrial Statement, Stipulated Facts, ¶ 2.

to purchase the Prospect Center by December 2002.[7]

4. On February 11, 1998, Ridgewood entered into a five-year lease whereby Ridgewood leased the Avondale Center from the Plaintiff. Ridgewood also signed a Promissory Note for the benefit of Plaintiff in the amount of $150,000, which was amended on March 31, 1998, to increase the principal amount to $180,000 (the "1998 Note"). The Avondale Lease and the Promissory Note were secured by personal guarantees from the Defendants to Plaintiff and a security agreement from Ridgewood pledging all of its accounts receivable/general intangibles, equipment, fixtures, inventory, and proceeds of collateral.[8]

5. On February 24, 2002, Gene Oster sent a letter to Valerie Glasgow regarding Ms. Glasgow's request for permission to sign a lease agreement for a potential day care center at the Rigden Farm subdivision. In that letter, Mr. Oster states that he has "been advised that before such approval should be granted by GDO Investments, LLC, that a review of your financial statements is needed." Therefore, Mr. Oster requested financials (personal and business) for the years 1999 through 2001.[9]

6. On April 29, 2002, Gene Oster sent another letter to Valerie Glasgow regarding Ridgewood's desire to open another day care center. Mr. Oster again requested financial information, including monthly balance sheets and profit and loss statements for both Day Care Centers and documents showing the financing or loan commitment.[10]

7. The Defendants and Ridgewood did not provide financial information in response to Mr. Oster's letters dated February 24, 2002 and April 29, 2002, and did not proceed with the opening of the new day care center.[11]

8. In December 2002, Ridgewood stopped making payments on the 1998 Note.[12]

9. In order to be able to purchase the real estate for the Day Care Centers, on June 23, 2003, Ridgewood and newly formed entities owned by the Defendants signed a new Promissory Note for the benefit of Plaintiff in the amount of $165,000 (the "2003 Note"). The 2003 Note was secured by a personal guaranty from Defendants and a security agreement issued by Ridgewood, Ridgewood Day School and Child Care Center–Avondale, Inc., Ridgewood Day School & Child Care Center and Ridgewood Day School and Child Care Center–Prospect, Inc., pledging all of their accounts receivable/general intangibles, equipment, fixtures, inventory, and proceeds of collateral as security for the payment of the 1998 Note and the 2003 Note. That same day Ridgewood and Plaintiff also extended the 1998 Note.[13]

10. On July 9, 2003, "Glasgow Investments—Prospect LLC" purchased the

---

**7.** Pretrial Statement, Stipulated Facts, ¶ 3. Motion for Partial Summary Judgment, Exhibits C and D.

**8.** Pretrial Statement, Stipulated Facts, ¶ 4. Motion for Partial Summary Judgment, Exhibits E, F, G, H, and I.

**9.** Motion for Partial Summary Judgment, Exhibit S.

**10.** Motion for Partial Summary Judgment, Exhibit T.

**11.** Response to Motion for Partial Summary Judgment, ¶ 17 and Exhibits L and M.

**12.** Pretrial Statement, Stipulated Facts, ¶ 5.

**13.** Pretrial Statement, Stipulated Facts, ¶ 6. Motion for Partial Summary Judgment, Exhibits J and K.

Prospect Center and "Glasgow Investments—Avondale LLC" purchased the Avondale Center.

11. On December 17, 2003, after a conversation with Gene Oster, Valerie Glasgow sent him a letter, entitled "Loan Proposal for GDO," seeking an additional loan of $220,000 to pay back payroll withholding taxes and pay for other expenses; the letter stated that the Day Care Centers were "doing very well, see financial statements attached [dated November 30, 2003] and are very capable of fulfilling this debt obligation as well as those that currently exist." In exchange, Plaintiff would receive payments electronically and be provided financial information at any time, and payments would be made with a higher interest rate.[14]

12. Plaintiff did not accept the December 17, 2003, "Loan Proposal for GDO."[15]

13. The financial statements attached to the December 17, 2003, loan proposal were a profit and loss statement for January through November 2003, and a balance sheet as of November 30, 2003, for Ridgewood Day School & Child Care Center, Inc.[16]

14. On March 9, 2004, Valerie Glasgow sent a letter to GDO Investments representing that the Day Care Centers were

doing very well, that the tax issue is being handled by selling the Prospect Center, and addressing getting back on a payment schedule.[17]

15. On April 30, 2004, Valerie Glasgow again sent a letter to GDO Investments representing that the Day Care Centers were almost at capacity, that the tax issues were not completely settled, but that funds to take care of it had been found, and again addressing getting back on a payment schedule.[18]

16. On May 6, 2004, Gene Oster sent a letter to Valerie Glasgow reminding her that no payments had been made for five months and directing her to make payments by May 20, 2004, by direct deposit.[19]

17. On July 5, 2004, Ridgewood and Plaintiff agreed to a new payment plan in which lower payments would begin on the 1998 Note, but would be postponed for the 2003 Note until January 2005.[20]

18. In July 2004, Valerie Glasgow requested that Plaintiff enter into a Factoring Agreement with Ridgewood.[21]

19. On or about July 21, 2004, Defendants prepared a list of the personal property purportedly owned by them, including the value of such property, as security for the 1998 Note and 2003 Note (the "Glasgow Property List").[22]

---

14. Pretrial Statement, Stipulated Facts, ¶ 7. Motion for Partial Summary Judgment, Exhibit L.

15. Pretrial Statement, Stipulated Facts, ¶ 8.

16. Pretrial Statement, Stipulated Facts, ¶ 9. Motion for Partial Summary Judgment, Exhibit L.

17. Motion for Partial Summary Judgment, Exhibit M.

18. Motion for Partial Summary Judgment, Exhibit N.

19. Motion for Partial Summary Judgment, Exhibit O.

20. Pretrial Statement, Stipulated Facts, ¶ 13. Motion for Partial Summary Judgment, Exhibit P.

21. Pretrial Statement, Stipulated Facts, ¶ 14.

22. Pretrial Statement, Stipulated Facts, ¶ 15. Motion for Partial Summary Judgment, Exhibit Q. The Affidavit of Gene Oster in Support of Response to Motion for Partial Summary Judgment, Exhibit I, states that, "On July 21, 2004, the Glasgows sent me a listing of their personal property with valuations for each item (the 'Glasgow Property List')." The Plaintiffs Amended Complaint, ¶ 54 states, "On or about July 21, 2004, Defendants issued a materially false and misleading

20. Valerie Glasgow provided Plaintiff with a listing of the personal property owned by Ridgewood which included a valuation for each item on this list.[23]

21. On August 12, 2004, Plaintiff and Ridgewood entered into a Factoring Agreement, and Defendants guaranteed Ridgewood's performance under the Factoring Agreement. The term of the Factoring Agreement was until December 31, 2004. Defendants also executed a security agreement pledging the personal property on the Glasgow Property List as security for the payment of the 1998 Note and 2003 Note. Attached to the security agreement was the Glasgow Property List.[24]

22. On or about December 27, 2004, Valerie Glasgow provided Plaintiff with what was identified as a profit and loss statement for January through November 2004, and a balance sheet as of November 30, 2004, for Ridgewood Day School—Avondale. The profit and loss statement and balance sheet had not been reviewed by Defendants' accountant. Plaintiff was to receive a copy of Defendants' tax return by the next day, but did not receive the tax return.[25]

23. On January 6, 2005, Ridgewood, other entities owned by Defendants, and Plaintiff entered into a new Factoring Agreement. Ridgewood and other entities owned by Defendants also signed an Amended Promissory Note amending the 2003 Note extending the due date and adding an additional $41,417 as indebtedness under the Note (the "Amended 2003 Note"). The Defendants signed a personal guaranty for the Amended 2003 Note.[26]

24. On January 6, 2005, the Defendants executed a Deed of Trust to Plaintiff pledging their personal residence as security for the 1998 Note and the Amended 2003 Note.[27]

25. Ridgewood, other entities owned by Defendants and the Defendants failed to make the required payments under the Promissory Notes and are in default under the terms of the Promissory Notes.[28]

26, On October 12, 2005, the Defendants filed their Voluntary Petition for bankruptcy relief, case no. 05–44131–SBB.

### III. *Material Controverted Facts*

The Defendants acknowledge that the following material facts are actually and in good faith disputed: [29]

(1) Whether Plaintiff was damaged due to the Glasgows' statements concerning the Glasgow Personal Property List. (Amended Complaint at ¶ 52).

(2) Whether the November 2003 and 2004 financial statements were materially false, (Amended Complaint at ¶¶ 55–56).

(3) Whether Valerie Glasgow intended to deceive Plaintiff with respect to the November 2003 and 2004 finan-

financial statement as to the ownership and value of the personal property they proposed to secure the indebtedness of Ridgewood and associated entities to GDO."

**23.** Pretrial Statement, Stipulated Facts, ¶ 17. Response to Defendants' Motion for Partial Summary Judgment, Exhibit F.

**24.** Pretrial Statement, Stipulated Facts, ¶ 18. Motion for Partial Summary Judgment, Exhibit Q.

**25.** Pretrial Statement, Stipulated Facts, ¶ 19. Motion for Partial Summary Judgment, Exhibit R.

**26.** Pretrial Statement, Stipulated Facts, ¶ 22.

**27.** Pretrial Statement, Stipulated Facts, ¶ 23.

**28.** Pretrial Statement, Stipulated Facts, ¶ 24.

**29.** Motion for Partial Summary Judgment, Part V (page 10).

cial statements. (Amended Complaint at ¶¶ 57–58).

(4) Whether Plaintiff was damaged due to its reliance on the November 2003 and 2004 financial statements. (Amended Complaint at ¶ 63).

The Defendants nevertheless seek summary judgment in favor of the Glasgows on Plaintiff's first and second claims for relief because they allege that despite these material disputed facts, the Plaintiff cannot satisfy all the elements of Section 523(a)(2)(A) or (B). The Defendants also allege that there is no evidence that Chad Glasgow made any representations about the finances, operations or payroll taxes of Ridgewood.

The Plaintiff's Response identifies additional facts which the Plaintiff states are material and, in good faith, disputed. These additional facts include whether the property values on the Glasgow Property List and Ridgewood Property List were materially false, made with the requisite intent and whether the Plaintiff relied on them; and the issue of reliance on the 2003 and 2004 financial statements.

## IV. *Issues*

The Court sees primarily two issues that need to be fleshed out in order to rule on the Motion for Partial Summary Judgment. The first is whether the various statements, written and oral, financial or otherwise, are actionable under 11 U.S.C. § 523(a)(2)(A) or 11 U.S.C. § 523(a)(2)(B). The focus here being on whether the statements are with respect to "the debtor's or an insider's financial condition." The second is whether the Plaintiff relied upon those statements. And the focus here being on the different standards under 11 U.S.C. § 523(a)(2)(A), a "justifiable reliance" standard, and under 11 U.S.C. § 523(a)(2)(B), a "reasonable reliance" standard.

## V. *Discussion*

### A. Overview of Section 523(a)(2)

Section 523(a)(2) provides that;

A discharge under 11 U.S.C. § 727 . . . does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

Under Section 523(a)(2)(A), the Plaintiff/Creditor must prove by a preponderance of the evidence that:

(1) the debtor made a false representation;

(2) the debtor made the representation with the intent to deceive the creditor;

(3) the creditor relied on the representation;

(4) the creditor's reliance was justifiable; and

(5) the debtor's representation caused

the creditor to sustain a loss." [30]

■ Under Section 523(a)(2)(B), the Plaintiff/Creditor must prove the following:

(1) the financial statement was in writing;

(2) the statement concerned the debtor's financial condition;

(3) the statement was materially false;

(4) the debtor caused to be made or published the statement with intent to deceive;

(5) the creditor reasonably relied upon the statement; and

(6) the creditor sustained the alleged loss and damage as a proximate result of the debtor's financial statement having been published." [31]

### B. *Field v. Mans* and **Reliance under Section 523(a)(2)**

The Defendants' Motion for Partial Summary Judgment challenges the Plaintiff's reliance in alleging that Plaintiff relied little upon representations made by the Glasgows and what little Plaintiff did rely on, it did so unreasonably and unjustifiably.

■ Section 523(a)(2)(B) expressly states that the level of reliance under that section is *reasonable* reliance. In *Field v. Mans,* the Supreme Court held that Section 523(a)(2)(A), however, requires only *justifiable* reliance, and not reasonable reliance.

In drawing the distinction between reasonable reliance and justifiable reliance,

the Supreme Court looked to the Restatement (Second) of Torts (1976) and stated as follows:

> The Restatement expounds upon justifiable reliance by explaining that a person is justified in relying on a representation of fact "although he might have ascertained the falsity of the representation had he made an investigation." ... "Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." ... Justifiability is not without some limits, however, as a person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." [32]

The Supreme Court also concluded that:

> As for the reasonableness of reliance, our reading of the Act does not leave reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact.... The subjectiveness of justifiability cuts both ways, and reasonableness goes to the probability of actual

---

**30.** *Field v. Mans,* 516 U.S. 59, 70, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (citation omitted); *see also Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir.1996) and *Wolf v. McGuire (In re McGuire),* 284 B.R. 481, 489 (Bankr.D.Colo.2002).

**31.** *The Armstrong Rubber Co. v. Anzman (In re Anzman),* 73 B.R. 156, 162–163 (Bankr. D.Colo.1986) (citations omitted).

**32.** *Field v. Mans,* 516 U.S. 59, 70–71, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (quoting Restatement (Second) of Torts, §§ 537, 540, 541, and 545A (1976)).

reliance.[33]

The Supreme Court also looked to Prosser's Law of Torts in further examining "justifiable reliance" by quoting the following,

It is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence form a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own .... the matter seems to turn upon an individual standard of the plaintiffs own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.[34]

■■■ Reasonable reliance requires a further showing, that is, "[f]or a creditor to demonstrate 'reasonable reliance' under section 523(a)(2)(B)(iii), it must show reliance in fact, i.e., that it actually relied on the financial information, and that such reliance was reasonable.... [T]he reasonableness of a creditor's reliance will be evaluated according to the particular facts and circumstances present in a given case. A creditor has a responsibility to ensure there exists some basis for reliance on the debtor's representations."[35]

### C. *Cadwell v. Joelson* and "Respecting the Debtors' or an Insider's Financial Condition" under Section 523(a)(2)

In applying the element of reliance to the statements in this case, the Court must make a determination as to whether the various statements made by the Defendants are, "respecting the debtor's or an insider's financial condition." If the statement is with respect to the financial condition, then it falls under Section 523(a)(2)(B) and the reasonable reliance standard. If it is not, then it falls under Section 523(a)(2)(A) and the "less demanding standard" of justifiable reliance.[36] The parties and the Court agree that the 10th Circuit Bankruptcy Appellate Panel, in *Cadwell v. Joelson*, has interpreted the phrase "respecting the debtor's financial condition" narrowly as "a statement of a debtor's net worth, overall financial health, or ability to generate income."[37] From the pleadings filed in this case, the Court is able to identify the following statements which are the subject of the Section 523(a)(2) claims.

### D. The Statements by Defendants to Plaintiffs

#### 1. Loan Proposal for GDO and 2003 Financial Documents

■■ The first concerns a document entitled Loan Proposal for GDO, dated December 17, 2003, prepared by Ridgewood Day School, along with the attached profit and loss statement for January through November 2003, and a balance sheet as of November 30, 2003, for Ridgewood Day School & Child Care Center, Inc. (the "Loan Proposal" and the "2003 financial

33. *Field v. Mans,* 516 U.S. at 76, 116 S.Ct. at 446.

34. *Field v. Mans,* 516 U.S. 59, 71–72, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (quoting W. Prosser, Law of Torts § 108, p. 717–718 (4th ed.1971)).

35. *First National Bank v. Cribbs (In re Cribbs),* 327 B.R. 668 (10th Cir.BAP 2005) (citations omitted).

36. *Field v. Mans,* 516 U.S. 59, 61, 116 S.Ct. 437, 439, 133 L.Ed.2d 351 (1995)

37. *Cadwell v. Joelson (In re Joelson),* 307 B.R. 689, 696 (10th Cir.BAP 2004).

documents").[38] The Loan Proposal falls under Section 523(a)(2)(B) as a statement of Ridgewood's financial condition as it refers to the equity in the buildings, the debt to the IRS, and states that the Day Care Centers are "doing very well, see financial statements attached, and very capable of fulfilling this debt obligation as well as those that currently exist." Additionally, the 2003 financial documents represent the overall financial health and net worth of the Ridgewood day care centers. Thus, the "reasonable reliance" standard would apply to these statements.

█ As an initial matter, the Court finds that there is no evidence that the Plaintiff *actually* relied upon the Loan Proposal and the 2003 financial documents, at least not to Plaintiff's detriment, as the Plaintiff did not accept the Loan Proposal. Even if the Plaintiff did rely on these statements, the reliance was not *reasonable* given the particular facts and circumstances up to this point. By this time, the Defendants had not produced the financial information that Mr. Oster requested on February 24, 2002 and on April 29, 2002, and, more importantly, Ridgewood stopped making payments on the 1998 Note in December 2002. The parties also agree that despite these problems in the past, that in June, 2003, without GDO Investments obtaining any financial information from the Defendants or Ridgewood, that GDO Investments entered into a new promissory note for $165,000 and extended the 1998 Note of $180,000.

### 2. March 2004 letter

█ Second is a letter dated March 9, 2004, sent by Valerie Glasgow to GDO Investments and Gene Oster (the "March 2004 letter").[39] The March 2004 letter also falls under Section 523(a)(2)(B) as a statement respecting Ridgewood's financial condition as the letter states, in part, "As gloomy as it may sound, the centers are doing VERY well. I only have availability for 3 kiddos at the Prospect Center, most still CCAP. The Avondale center still has room but has increased its enrollment by 30% since I have been back working there on a daily basis, . . . the tax issue is hopefully being handled by selling the Prospect center to obtain the equity that we have in it to pay off this balance. I am selling it for the appraisal price which was $325,000." In finding that this is a statement respecting Ridgewood's financial condition, the Court looks to the narrow definition in *Cadwell v. Joelson*, that "the statement need not be made in the form of a formal financial statement, but it must purport to state the debtor's net worth, his overall financial condition, or his ability to generate income."

█ There is no evidence that the statements made were materially false or that Plaintiff actually relied upon the letter. The letter appears to be a somewhat casual and general correspondence that acknowledges there is a "gloomy" perception, indirectly acknowledges that capacities at the Day Care Centers were down, but now on the rise, and acknowledges that the tax issue (which was also disclosed to the Plaintiff in the Loan Proposal) was still in existence. It is also uncontroverted that during this time, Ridgewood was not making payments on the notes.[40] Under

---

**38.** Pretrial Statement, Stipulated Facts, ¶ 7. Motion for Partial Summary Judgment, Exhibit L.

**39.** Motion for Partial Summary Judgment, Exhibit M.

**40.** *See* letter dated May 6, 2004, wherein Gene Oster reminds Ms. Glasgow that no payments have been made for five months. Motion for Partial Summary Judgment, Exhibit O.

these circumstances, even if the statements were materially false and Plaintiff did rely on them, the Court does not find that reliance was reasonable.

### 3. April 2004 letter

The third statement is a letter dated April 30, 2004, sent by Valerie Glasgow to GDO Investments and Gene Oster (the "April 2004 letter").[41] Similar to the March 2004 letter, the April 2004 letter states, in part, "The centers are almost at capacity, the fullest they have been in 2 years! We have 8 spots available out of 78 for daycamp, things are definitely pulling together. Tax issues are not completely settled, but the funds to take care of it have been found." For the same reasons stated above with respect to the March 2004 letter, the Court finds this is a statement respecting Ridgewood's financial condition, but that there is no evidence that the statements made were materially false or that Plaintiff actually relied upon the letter. This letter also appears to be a casual letter and update, that is more optimistic, but acknowledges that the tax issues are not completely settled. Even if the Plaintiff did rely on the statements in the April 2004 letter, the Court does not

find this reliance, without further investigation, was reasonable.

### 4. Ridgewood Day School Inventory

▮▮▮▮ Fourth is a facsimile transmittal cover sheet from Valerie Glasgow to Gene Oster, without a date, with attached spreadsheets entitled, "Ridgewood Day School Inventory."[42] The Court finds that while the Ridgewood Day School Inventory spreadsheets pertain to an aspect of Ridgewood's financial condition (i.e. assets), they are not a statement of Ridgewood's net worth, overall financial health, or ability to generate income. Therefore, this statement falls under Section 523(a)(2)(A) and the justifiable reliance standard. It appears that the Ridgewood Day School Inventory spreadsheets were related to the August 12, 2004, Factoring Agreement.[43] Plaintiff's main contention with respect to the Ridgewood Day School Inventory spreadsheet appears to be the value of the inventory contained therein, that the Defendants intentionally overstated the value of the inventory. In reviewing the evidence and drawing reasonable inferences therefrom in the light most favorable to the Plaintiff, there appears to

---

**41.** Motion for Partial Summary Judgment, Exhibit N.

**42.** Response to Motion for Partial Summary Judgment, Exhibit F. The spreadsheets are dated July, 2004.

**43.** There are confusing or conflicting allegations regarding when the Ridgewood Property List and Glasgow Property List were provided to Plaintiff and whether they were provided for the July 5, 2004 transaction or the August 12, 2004 transaction. Plaintiffs Response to the Motion for Partial Summary Judgment, ¶ 8, states that the Ridgewood Property List was provided "for the purposes of providing collateral for the Factoring Agreement, to receive an extension of the 2003 Note, and to receive a deferral on the 1998 Note." The Court understands that the extension of the

2003 Note and the deferral on the 1998 Note occurred on July 5, 2004, Plaintiff's Response to the Motion for Partial Summary Judgment, ¶ 20, states that "Plaintiff had received the Ridgewood Property List and Glasgow Property List from Defendants prior to entry into the August 2004 agreements." The Affidavit of Gene Oster (Exhibit I to Plaintiffs Response to the Motion for Partial Summary Judgment) states that "On July 21, 2004, the Glasgows sent me a listing of their personal property ... (the 'Glasgow Property List')." If GDO did not receive the Glasgow Property List until July 21, 2004, how could it have relied on that list in agreeing to the new payment plan on the 1998 note and postponement of the 2003 Note which all occurred earlier on July 5, 2004?

be a genuine issue of material fact as to whether the Plaintiff justifiably relied on the Ridgewood Day School Inventory. The record is unclear as to whether the August 12, 2004, Factoring Agreement and additional security agreements were part of the July 5, 2004, agreements whereby GDO agreed to a new payment plan on the 1998 Note and 2003 Notes. These facts, as well as Chad Glasgow's involvement with preparation of the list, evidence concerning reliance and whether the value of the inventory was materially false should be addressed at trial.

### 5. Glasgow Property List

The fifth statement includes a Uniform Commercial Code Security Agreement dated August 12, 2004, along with the attached list of personal property entitled, "Glasgow's Personal Property List" (the "Glasgow Property List").[44] Again, the Court finds that while the Glasgow Property List pertains to an aspect of the Defendants' financial condition, it is not a statement of the Defendants' net worth, overall financial health, or ability to generate income. Therefore, this statement falls under Section 523(a)(2)(A). For the reasons stated above with respect to the Ridgewood Day School Inventory, the

Court finds that there are genuine issues of material fact as to Chad Glasgow's involvement with preparation of the list, evidence concerning reliance and whether the value of the personal property was materially false. As with the Ridgewood Day School Inventory, the record is unclear exactly when the Glasgow Property List was provided by Defendants to Plaintiff and whether there was in fact "money, property, services, or an extension, renewal, or refinancing of credit" as a result of the Ridgewood Day School Inventory and Glasgow Property List.[45]

### 6. 2004 Financial Documents

■ The sixth statement includes a facsimile transmittal cover sheet from Gene Oster to Tim Normandin (accountant for GDO Investments), dated December 27, 2004, with attached profit and loss statement for January through November 2004, and a balance sheet as of November 30, 2004, for Ridgewood Day School— Avondale (the "2004 Financial Documents").[46] The 2004 Financial Documents are respecting Ridgewood's Avondale Center's financial condition as they concern the overall financial health and net worth of the Ridgewood Avondale Center. Thus, the Section 523(a)(2)(B) reasonable reli-

---

**44.** Pretrial Statement, Stipulated Facts, ¶ 15. Motion for Partial Summary Judgment, Exhibit Q.

**45.** The timing of these events is important as the Court has some concern as to whether there was in fact "money, property, services, or an extension, renewal, or refinancing of credit" as a result of the Ridgewood Day School Inventory and Glasgow Property List, See Footnote 43. *See also In re Gerlach,* 897 F.2d 1048, 1050 (10th Cir.1990)( [N]ot only is a new debt procured through fraud excepted from discharge, but old debt which is extended, renewed, or refinanced through fraud is also nondischargeable. *See Caspers v. Van Horne (In re Van Horne),* 823 F.2d 1285, 1288–89 (8th Cir.1987); 3 *Collier on Bank-*

*ruptcy* ¶ 523.08, at 523–40, & ¶ 523.10 (L. King 15th ed. 1989).... An extension, within the meaning of § 523(a)(2), is "an indulgence by a creditor giving his debtor further time to pay an existing debt." *Takeuchi Mfg. (U.S.), Ltd. v. Fields (In re Fields),* 44 B.R. 322, 329 (Bankr.S.D.Fla.1984) (quoting *State v. Mestayer,* 144 La. 601, 80 So. 891, 892 (1919)), The Bankruptcy Code, therefore, protects a creditor "who is deceived into forbearing from collection without being given an opportunity to grant or deny the extension of credit." *Id.; cf. Zarate v. Baldwin (In re Baldwin),* 578 F.2d 293, 295 (10th Cir.1978)).

**46.** Pretrial Statement, Stipulated Facts, ¶ 19. Motion for Partial Summary Judgment, Exhibit R.

ance standard applies. The pleadings and exhibits before the Court show that Ms. Glasgow told Ms. Oster that the 2004 Financial Documents were from her Quickbooks and that her accountant had not reviewed them; Mr. Oster recalled that GDO Investment's accountant called the 2004 Financial Documents "marginal" and that GDO Investments also requested, but did not receive, the Glasgow's personal tax return. In exchange for "marginal" Financial Documents, the Plaintiff went ahead in January 2005 and entered into a new Factoring Agreement and amended the 2003 Note in favor of the Defendants, allowing the 2003 Note to be extended and adding an additional $41,417 as indebtedness. As the Court has concluded above, the Plaintiff's reliance, if any, on the 2004 Financial Documents was not reasonable under the circumstances.

### 7. Ridgewood Payroll Taxes

█ The Plaintiff's Response to the Motion for Partial Summary Judgment also raises oral statements made by Ms. Glasgow regarding the timing of payment of payroll taxes by Defendants' entities. Plaintiff alleges that in early July 2004, Ms, Glasgow verbally represented to Plaintiff that the payroll taxes for Defendants' entities had been paid. Plaintiff alleges that she knew the statement was false because the payroll taxes were not paid until December 3, 2004, and that she intended for Plaintiff to rely on her statements because she was aware that based upon prior attempts to borrow monies from Plaintiff to pay payroll taxes that Plaintiff would not extend the 2003 Note if payroll taxes remained owing.

█ The Court finds that while the statements regarding the payroll taxes pertain to an aspect of Ridgewood's financial condition (i.e. a debt), they are not a statement of Ridgewood's net worth, overall financial health, or ability to generate income. Therefore, the statements regarding payroll taxes fall under Section 523(a)(2)(A) and the justifiable reliance standard. In reviewing the evidence and drawing reasonable inferences therefrom in the light most favorable to the Plaintiff, there appears to be a genuine issue of material fact as to whether the Plaintiff justifiably relied on the statements made regarding the payroll taxes.

### VI. *Conclusion and Order*

The Plaintiff admits that Ridgewood had a spotted history of making payments toward the 1998 Note and 2003 Note; that several payments were either late, missed or not paid; and that the Defendants made repeated assurances of the making of future payments.[47] This appears to have been the pattern since December 2002 when payments stopped on the 1998 Note. Further, it appears that GDO Investments knew how to protect itself, but failed to take the steps to do so. Mr. Oster had legal counsel, Mr. Olive, and an accountant, Mr. Normandin, however, there is evidence that he failed to seek their advice or heed their warnings. For instance, Mr. Oster did not inform Mr. Olive that Ridgewood had missed payments for five months [48] and Mr. Oster recalled that Mr. Normandin called the 2004 financial documents "marginal" for what he was loaning them.[49] There is also evidence that the Defendants ignored GDO Investments requests for financial information, yet GDO

---

47. Plaintiff's Amended Complaint, General Allegations ¶ s 3, 4, 9, 10.

48. Motion for Partial Summary Judgment, Exhibit O

49. Deposition of Gene Oster at 128:2–10.

Investments continued to transact business with and extend credit to Ridgewood.

For all of these reasons, the Court finds that the Plaintiff cannot meet the reasonable reliance standard under Section 523(a)(2)(B), but that there is a genuine issue of material fact as to whether the Plaintiff can meet the justifiable reliance standard under Section 523(a)(2)(A).

Consistent with the determinations set forth above, the Court finds that the Defendants' Motion for Partial Summary Judgment should be denied as to the statements and representations made under Section 523(a)(2)(A) and granted as to the statements and representations made under Section 523(a)(2)(B).

Based upon the above and foregoing,

IT IS ORDERED that the Defendants' Motion for Partial Summary Judgment is DENIED on the claims under 11 U.S.C. § 523(a)(2)(A) and GRANTED on the claims under 11 U.S.C. § 523(a)(2)(B).

IT IS FURTHER ORDERED that JUDGMENT shall enter in favor of the Defendants on the claims under 11 U.S.C. § 523(a)(2)(B).